[Civ. No. 46482. Second Dist., Div. Four. Nov. 24, 1975.]

In re the Marriage of FRANCES RAINES
and DOUGLAS FREDERICK SMILEY.
DOUGLAS FREDERICK SMILEY, Appellant, v.
FRANCES RAINES SMILEY, Respondent.

**COUNSEL**

Newell & Chester and Robert M. Newell for Appellant.

Milo V. Olson for Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—This is an appeal by the husband from an order of the superior court denying his motion to modify the wife-support provisions of a previous order of the court, entered on September 20, 1970, which order had incorporated and ordered the parties to comply with the executory provisions of a property settlement agreement theretofore executed by the parties.[1]

---

[1]The interlocutory decree of dissolution, entered on May 14, 1970, whose terms were carried forward into the final decree entered on June 4, 1970, expressly reserved jurisdiction "to divide the community property of the parties equally, at a later time, and also determine other related issues, that is, the issue of respondent and cross-petitioner's right to receive alimony, if any, the issue of the childrens' custody and support and the

## I

The order herein appealed from was couched in the following terms:

"The Court finds that the Order, Judgment and Decree signed and filed on September 10, 1970 incorporated the Property Settlement Agreement entered into by the parties on June 1, 1970 and ordered the parties to comply with all the executory provisions thereof; that by Article I,[2] Subdivision 3 of said Judgment and Property Settlement Agreement, the parties agreed and the Court ordered, that the Property Settlement Agreement was integrated not subject to modification, and that the Agreement may not be amended except by an instrument in writing signed by both parties. (Civil Code, § 4811(b)).

"Petitioner's request for modification is denied."

The applicable provisions of that property settlement agreement are as follows:[3]

### "ARTICLE IV

"1. Husband shall pay to Wife, as alimony for her support and maintenance, the sum of $850.00 per month commencing September 1, 1970 and continuing monthly thereafter for five years, thence at the rate of $700.00 per month for the succeeding five years, thereafter $600.00 per month until the death or marriage of Wife. This provision for the support of Wife is subject to any order, Decree or Judgment of any Court based thereon."

### "ARTICLE VII

"3. The parties hereto acknowledge that this agreement constitutes their entire understanding and that neither has made any promise,

issue respecting payment of counsel's fees." The order, also entered on June 4, 1970, was made pursuant to that reservation of jurisdiction. Since no objection was made, in the trial court or here, to the reservation of jurisdiction over spousal support, we do not consider whether such a reservation may be made over objection by either party.

[2]The article mentioned is a clerical error, since the correct article would be article VII; see footnote 3.

[3]Obviously the reference in the order to "Article I, subdivision 3" of the agreement is a clerical error, since that subdivision is part of the recital paragraph of the agreement and says, only: "The parties have separated and are now living separate and apart." Both parties, in their briefs, have treated the order as though it referred to subdivision 3 of article VII of the agreement, quoted in the text. We so treat the issue before us.

covenant, representation, or warranty, except as herein expressly set forth, and that this document contains all of the negotiations and agreements having been merged herein. The parties further covenant and agree that each and every promise, covenant, and undertaking herein set forth has been made as consideration for each and all of the remaining promises, covenants, and undertakings herein, and that this agreement is entire, indivisible, and shall constitute an integrated agreement, which is not subject to modification. This agreement may not be amended except by an instrument in writing signed by both parties."

Prior to 1967, the case law of this state had developed complicated distinctions, whereby the modifiability and enforcement of the wife-support provisions of a property settlement agreement turned on the language of the agreement and of the decree. If the agreement did not refer to any court action and it was not tendered to the court for judicial action, the agreement was, like any other contract, non-modifiable except by a suit in equity for reformation and was enforceable only by a plenary suit at law for breach of contract. If the agreement did refer to judicial action and, by its terms, was not effective without such action, the agreement was treated as a mere stipulation, and the judicial action left the decree as the only enforceable document. If the agreement did not require judicial action for its effectiveness, the result turned on the language of the decree. If the decree merely "approved" the agreement (whether or not the agreement was incorporated therein), it might or might not be modifiable but it was not enforceable by contempt, only by a suit at law for breach of contract.[4] If the decree, however, ordered the parties to comply with the terms of the agreement (as did the order herein involved), the agreement was "merged" into the decree, leaving the decree as the only enforceable document, modifiable and enforceable by contempt. In case of a decree merely "approving" the agreement, modifiability turned on whether the agreement was "integrated"—i.e., the wife-support provisions were inextricably interwoven with the provisions for division of community property—or was "non-integrated"—i.e., the wife-support provisions were separable from the provisions dealing with the division of community property. (See Family Law for Cal. Lawyers (Cont. Ed. Bar 1956) pp. 290-292 & 307-308; Propper, *The Judgment of Dissolution and the Agreement—Incorporation,*

---

[4]The tactical advantage (or disadvantage) of a decree merely "approving" an agreement was that, in such a situation, any attack on the agreement as inequitable or fraudulent had to take the form of a suit against the decree for extrinsic fraud, whereas a suit to reform an agreement never "approved" by judicial action could be based on the kind of fraud or inequity involved in traditional suits for reformation.

*Merger, Integration and Approval* (1975) 51 L. A. Bar J. 177.) The result was a constant stream of litigation wherein the courts were required to interpret language of agreements and decrees which were not always as clearly drawn as could be desired.

In 1967, in an attempt to simplify the problem, the Legislature amended section 139 of the Civil Code to provide (in pertinent part) as follows: "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order except as to any amount that may have accrued prior to the order of modification or revocation, and except to the extent that any written agreement, or if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary. All such orders of the court for the support of the other party, even if there has been an agreement of the parties, may be enforced by the court by execution, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary."

The effect of that amendment was to make all wife-support provisions of a property settlement agreement, whether or not merged, whether or not merely approved, and whether or not "integrated" under the previous cases, both modifiable and enforceable by contempt.

When the new Family Law Act was adopted in 1969, to become effective on January 1, 1970, the Legislature adopted new section 4811 of the Civil Code, reading (in pertinent part) as follows: "(b) The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or if there is no written agreement any

oral agreement entered into in open court between the parties, specifically provides to the contrary."

The new section carried forward the terms of the 1967 amendment of section 139, with two exceptions: (1) it made any modification order effective as of the date of filing a motion to modify; and (2) it dropped the last sentence of the 1967 provision. However, the omission of that language from section 4811, resulted, only, in the addition to the Family Law Act of section 4540, making the same enforcement methods applicable not only to the new section but, also, to the new sections 4516, 4700 and 4801.[5] However, the omission of any mention of section 4811 in the draftsmen's comment (quoted in fn. 5) left a potential question as to the effect of the 1969 deletion of enforcement language from new section 4811.

■ The issue now before us is whether the concluding language of article IV of the agreement: "This provision for the support of Wife is subject to any order, Decree or Judgment of any Court based thereon" —was intended to make clear an intent to permit modification, or whether the language of subdivision 3 of Article VII of the agreement constituted a "written· agreement [that] specifically provides to the contrary."

We conclude that the trial court properly interpreted the agreement as one that had expressly provided against modification. Most of the hearing on the motion to modify was directed to the merits of the motion. Only a brief bit of evidence dealt with the interpretation problem. The husband testified as follows: "A· Well, my advice from my counsel at that time was—I agreed that we should give her—he used the word 'turn around' period. 'Let's give her some money for a length of time and see if she can't get herself adjusted.' "

We can find in the record before us no testimony on the part of the wife on that matter. Not only was the trial court not required to believe the self-serving testimony of the husband but, even if the court accepted that testimony, it could construe the vague language of that testimony as setting forth only some preliminary negotiation not carried into the final document. In that connection, we note that the carefully drafted

---

[5]The draftsmen's comment to section 4540 reads as follows: "Section 4540 is a catch-all enforcement provision, relating to the entire Family Law Act and permitting all of the usual enforcement procedures. It avoids problems arising from repeal or deletion of enforcement procedure language in specific sections, e.g., CC 4516, 4517, 4700, and 4801."

provisions in article IV of the agreement, providing as they do for a specific schedule of decreasing payments, running for 10 years and thereafter for the wife's life as long as she remains single, is inconsistent with the "turn around" period of "three or four years" mentioned in the husband's testimony. Since the trial court may have concluded, as do we, that the testimony before it shed no light on the intentions of the parties at the time the agreement finally was drafted and executed, the issue before it, and before us, became one of interpreting the face of the agreement (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]).

We regard the concluding language of article IV as intended only to resolve the ambiguity, above noted, as to the methods of enforcement of the agreement and order, making clear that contempt was a permissible method.[6] With that potential ambiguity removed, the language of article VII appears to us, as it did to the trial court, to be sufficient to satisfy the statutory requirement of a "written agreement [that] specifically provides" against modifiability.

## II

Since we agree with the trial court that the agreement was not modifiable, we do not reach the issue of whether the modification could have been justified on the merits.

The order appealed from is affirmed.

Dunn, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied December 11, 1975, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied January 21, 1976.

---

[6]We do not intend to imply that the trial court's order, containing as it did, a direct order for compliance was not enforceable by contempt even without the express language in article IV of the agreement.