[Civ. No. 61914. Second Dist., Div. Three. Oct. 15, 1982.]

CHARLOTTE ESSERMAN, Plaintiff and Respondent, v.
JACK ESSERMAN, Defendant and Appellant

COUNSEL

David S. Smith and Robert K. Kent for Defendant and Appellant.

Mathon & Rosensweig and Michelle Cooper for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Appellant Jack Esserman (Jack) appeals from the dismissal of his order to show cause (OSC) re modification of interlocutory judgment.

The trial court held that an October 14, 1959, property settlement agreement was approved and incorporated into the interlocutory judgment of divorce on December 15, 1959, (1959 agreement) and as such was binding on the parties and the trial court. The trial court further ruled that a compromise agreement between the parties dated December 29, 1970, did not render the support provisions contained in said judgment of divorce modifiable.

For reasons hereinafter discussed, we affirm the trial court's ruling that the 1959 agreement in the judgment was nonmodifiable as to the will

provisions. However, we find that the spousal support provisions contained within the 1970 agreement are themselves modifiable and we reverse that part of the trial court's order.

PROCEDURAL AND FACTUAL BACKGROUND[1]

Jack and Charlotte were first married in 1933, divorced in 1951, remarried in 1953, redivorced in 1959, and involved in litigation relating thereto ever since.

They entered into a written agreement October 14, 1959, covering inter alia, child and spousal support, division of property, and disposition of Jack's estate on his death. This agreement was approved by the trial court at the time of the hearing upon Charlotte's complaint for divorce, and was incorporated into the interlocutory judgment of divorce dated December 15, 1959.

The 1959 agreement was the subject of civil litigation instigated by Jack on March 30, 1970. This litigation sought to rescind said agreement and to set aside the interlocutory judgment. Charlotte filed a cross-complaint therein.

The litigation resulted in a modification of spousal support set forth in a document dated December 29, 1970, entitled "Agreement In Compromise and Settlement of Disputed Claims to Property Settlement Agreement and Judgment of Divorce" (Compromise Agreement).

In this later agreement, the parties mutually agreed that Jack was to pay Charlotte spousal support of $300 per month until death or remarriage, a modification of the amount called for by the 1959 agreement.

The Compromise Agreement further provided that "[n]othing herein contained is to be deemed to affect in any manner any of the remaining rights and obligations set forth in said [1959] Property Settlement Agreement and in said divorce action as between the parties."[2]

In September 1976, Charlotte filed an OSC seeking court modification of the prior judgment and requesting an increase in spousal support to

---

[1]The rendition herein set forth is taken from the pleadings in the present case and from information located in the appellate file of *Esserman* v. *Esserman*, 2d Civil No. 52168, wherein an unpublished opinion was lodged October 26, 1978.

[2]The Compromise Agreement was not submitted to the court nor incorporated into a court order; however, the parties abided thereby.

$750 a month on the grounds of material change of circumstances. Responsively, Jack filed an OSC seeking termination of all spousal support. The trial court granted an increase, but the order modifying spousal support was reversed on appeal because of the inadequacy of the findings.

In October 1979, Jack initiated the OSC now in issue seeking permanent termination of spousal support, citing to both the 1959 agreement and the Compromise Agreement in his supporting declaration.[3] He further sought to modify the 1959 agreement by deleting the requirement that he leave 75 percent of his estate to his children by Charlotte, or by the substitution of a proposed alternative.

This appeal is from the trial court's granting of Charlotte's motion to dismiss the OSC re modification of interlocutory judgment.

CONTENTIONS

Jack's contentions may be summed up as follows: (1) the Compromise Agreement is modifiable; (2) the 1959 agreement was not an integrated agreement; (3) the trial court failed to rule on Jack's request for interpretation and clarification of the interlocutory judgment; and (4) the trial court erred in the $4,000 award of attorney's fees and costs to Charlotte.

Charlotte maintains that the trial court was correct in its ruling that it was without jurisdiction to modify the 1959 agreement as the judgment had incorporated an integrated agreement between the parties, and that the Compromise Agreement provided no additional basis for jurisdiction.

DISCUSSION

1. *The trial court's jurisdiction to modify the Compromise Agreement.*

■ Jack argues that Civil Code Section 4811 (section 4811) effective January 1, 1970, empowers the court to modify the provisions for spousal support in the Compromise Agreement.

Section 4811, subdivision (b) provides in pertinent part: "The provisions of any *agreement or order* for the support of either party shall be

---

[3]Although Jack captioned his action "Order to Show Cause Re Modification of Interlocutory Judgment Entered January 5, 1960," the supportive declaration indicated that he believed the spousal support provisions of the 1959 agreement were "modified" by the Compromise Agreement and that the Compromise Agreement itself was modifiable.

subject to subsequent modification or revocation by court order, . . . except to the extent that any written agreement . . . specifically provides to the contrary.'' (Italics added.)

The validity of Jack's contention turns on whether section 4811 applies to *private agreements* made after the entry of a final judgment of dissolution which also deals with spousal support. This issue is one of first impression. We find that it does apply.

Section 4811 refers to ''any agreement'' and no qualifications are attached to the term. Therefore nothing on the statute's face mandates that it apply only to agreements made before the entry of a final decree. Additionally, the use of the conjunctive ''or'' before the word ''order'' indicates that neither court approval nor merger into a decree is necessary before a court may exercise its power to modify.

The purpose of the statute supports its application to agreements made *after* the entry of final judgment. Section 4811 purports to insure that courts can modify support awards when circumstances change except where the parties expressly provide to the contrary. (*In re Marriage of Nielsen* (1980) 100 Cal.App.3d 874, 877 [161 Cal.Rptr. 272].) Underlying section 4811 is the policy determination that the public interest is best served when support awards reflect changes in need or ability to pay. Agreements entered into after dissolution are just as likely to need future revision as agreements entered into at the time of separation. Although the parties can draw on actual postdissolution experience to aid them in planning for possible changes, not all contingencies can be foreseen, and modification may be desirable.

Since section 4811 is generally applicable to an agreement for support made after entry of a final judgment of dissolution, we must decide whether in this case the exception for express provisions of non-modifiability is controlling. We find no language in the Compromise Agreement which would meet the test of ''specific unequivocal language directly on the question of [judicial] modification.'' (*Fukuzaki* v. *Superior Court* (1981) 120 Cal.App.3d 454, 458.)[4]

Charlotte adds nothing to the resolution of this issue in that it was her position that the Compromise Agreement was a private agreement in settlement of a civil case without invoking the auspices of the court which merely changed certain provisions of the 1959 agreement, and

---

[4]We find that the 1959 agreement was not incorporated into the Compromise Agreement. Hence, any language in the 1959 agreement rendering it nonmodifiable does not affect the Compromise Agreement.

thereby did not in and of itself confer jurisdiction upon the trial court to modify the spousal support she was receiving pursuant thereto.

We hold that the trial court had the authority to modify the spousal support arrangement agreed to in 1970. In doing so, we stress that the Compromise Agreement provides a source of authority enabling a trial court to entertain a request for modification distinct from any jurisdiction a trial court might have had under the 1959 agreement and interlocutory judgment.

Because the trial court may modify the support provision in the Compromise Agreement and because the parties are contractually bound to follow the Compromise Agreement rather than the 1959 agreement with regard to support payments,[5] we need not decide whether the support provisions in the 1959 agreement are modifiable.

*2. The trial court's power to delete from the 1959 agreement the provision regarding Jack's estate.*

■■■ The trial court denied Jack's request to delete the will provision ruling that the 1959 agreement and interlocutory judgment were nonmodifiable. We affirm this ruling.

Private settlements dividing property are favored as a matter of public policy. If the agreement is "not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties [it] is valid and binding on the court." (*Adams* v. *Adams* (1947) 29 Cal.2d 621, 624 [177 P.2d 265]; *Henley* v. *Henley* (1960) 183 Cal.App.2d 519, 522 [6 Cal.Rptr. 733].) The court may not alter the terms even when they are incorporated into an interlocutory decree. (*Robinson* v. *Robinson* (1949) 94 Cal.App.2d 802, 805-806 [211 P.2d 587].)

Here there are no indications that fraud, duress or breach of fiduciary relationship were involved in the drafting of the will provision. The trial court therefore lacked the jurisdiction to delete the provision requiring Jack to will 75 percent of his estate to his daughters.

■■■ Because jurisdiction was the only issue properly before the trial court, it was the only issue upon which findings of fact should have been

---

[5]Parties may waive the right to enforce an order by substitution of a private agreement. (*Graham* v. *Graham* (1959) 174 Cal.App.2d 678, 684 [345 P.2d 316] [court held that by entering into a private agreement reducing support by $30 per month petitioner waived right to claim arrears for that sum].)

made. (See 4 Witkin, Cal. Procedure (2d ed. 1971) § 335, p. 3137.) Findings necessary to the conclusion that the Compromise Agreement provided a basis of jurisdiction were proper. However, the judgment contains additional findings which were not relevant to either that conclusion, or the trial court's decision that it was without jurisdiction to modify the will provision of the 1959 agreement. Such portions of the judgment are in excess of jurisdiction, and therefore void and without legal effect. (See *Sacramento M. U. Dist.* v. *All Parties, etc.* (1936) 6 Cal.2d 197, 203 [57 P.2d 506].)

### 3. *The trial court had no duty to construe the term "estate."*

 Jack contends that even assuming the trial court had no jurisdiction to delete the will provisions, the trial court should have undertaken to construe the term "estate." His OSC re modification requested that "the court make an order augmenting the Interlocutory Judgment, dated December 15, 1959 by providing that the only portion of Respondent's estate subject to said 75% provision was Respondent's estate as of the signing of the Interlocutory Judgment, and not Respondent's subsequent estate."

Liberally construed this paragraph requesting such relief well might be read, as Jack asserts, as a request for a declaratory judgment. However, because we are uncertain whether the OSC re modification properly included a cause of action for declaratory relief, and because the daughters as third party beneficiaries of the 1959 agreement are proper parites to any action concerning the will provisions, we decline to read the request so broadly. Rather, we interpret the above-quoted portion of the OSC as simply seeking an alternative kind of modification. So construed, the requested relief was beyond the trial court's jurisdiction to grant.

The trial court therefore did not err in refusing to express an opinion on the meaning of the term "estate."

### 4. *The award of attorney's fees is remanded for reconsideration in the light of this opinion.*

The trial court awarded Charlotte $4,000 attorney's fees and costs against Jack "pursuant to the agreement of the parties and the interlocutory judgment," and also found that Jack had the ability to pay and Charlotte had a need for reasonable attorney's fees and costs to defend against the OSC.

The 1959 agreement provides: ". . . in the event that either of the parties shall employ an attorney to enforce any of the provisions . . . [and] in the event that such party prevails . . . such party shall be entitled to reasonable attorney's fees."

In view of our holding that Charlotte "prevailed" in her position that the provisions dealing with the disposition of 75 percent of his "estate" to his children were nonmodifiable, she should be entitled to some award of attorney's fees.

We have not dealt with whether the support provisions in the 1959 agreement are modifiable. We did however rule that the Compromise Agreement is modifiable, contrary to Charlotte's position on that issue.

In view of our decision, the trial court may want to reconsider its award.

### DISPOSITION

In accordance with our opinion, the order of dismissal is reversed and remanded to the extent it proclaims that the trial court is without jurisdiction to entertain an OSC re modification of spousal support pursuant to the Compromise Agreement. The award of attorney's fees is reversed and remanded for further consideration. The order is affirmed in other particulars. Each party to bear his or her own costs on appeal.

Lui, J., and Danielson, J., concurred.

On November 3, 1982, the judgment was modified to read as printed above.