[Civ. No. 52028. First Dist., Div. Five. July 29, 1983.]

In re the Marriage of LILLIAN R. and CHARLES D. FORCUM.
CHARLES D. FORCUM, Appellant, v.
LILLIAN R. FORCUM, Respondent.

COUNSEL

Daniel E. Hanley, Herman J. Mager and Keough, Cali & Hanley for Appellant.

Gardner F. Holmes and Dale C. Mead for Respondent.

OPINION

KING, J.—In this case we hold that where the general provisions of a marital settlement agreement (incorporated by reference into the interlocutory judgment of dissolution of marriage) do not permit future judicial modification, but the agreement also contains a specific provision on spousal support the legal effect of which is to retain the jurisdiction of the court to

modify spousal support, the specific provision prevails and the trial court has jurisdiction to modify spousal support.

The interlocutory judgment of dissolution of the marriage of Charles D. Forcum and Lillian R. Forcum incorporated by reference a property settlement agreement between the parties which provided that Charles should pay spousal support to Lillian in the sum of $425 per month for five years and thereafter pay spousal support of $1 per year for an additional five years, whereupon spousal support would terminate.[1] Just before the first five-year period ended, Lillian moved the court to modify the order to continue the $425 per month payments for the additional five years. The trial court ruled that it had jurisdiction to modify the amount of spousal support payable during the second five-year period and it granted Lillian's motion. We affirm the judgment.

Civil Code section 4811, subdivision (b), provides that a spousal support agreement "shall be subject to subsequent modification or revocation by court order . . . except to the extent that any written agreement . . . specifically provides to the contrary."[2]

"The evident purposes of Civil Code section 4811 were to dispose of the abstruse and unprofitable jurisprudence which had grown up around the concepts of integration and severability [citations] and establish a legislatively declared social policy that contractual provisions for the support of a spouse be subject to modification by the court in the light of changed circumstances unless the parties explicitly agree to preclude such modification. The utility of this policy is obvious. Even in the absence of inflationary distortions, the parties to a marital settlement agreement can hardly anticipate and provide for unexpected changes of circumstance which may invalidate the expectations reflected in the agreement. Despite the public interest in reserving for judicial redetermination on the basis of changed circumstances contractual provisions for support, the Legislature left it open to marital partners to preclude judicial modification by inserting in the agreement a specific provision to that effect." (*In re Marriage of Nielsen* (1980) 100 Cal.App.3d 874, 877-878 [161 Cal.Rptr. 272].)

Section 4811 has been considered in several appellate court opinions. The most recent is *Esserman* v. *Esserman* (1982) 136 Cal.App.3d 572 [186 Cal.Rptr. 329] which held that section 4811 does apply to private agree-

---

[1]The marital settlement agreement was prepared by counsel for Charles and executed by Lillian without the benefit of independent counsel.

[2]Except as otherwise indicated, statutory references are to the Civil Code. Section 4811, subdivision (b), applies to all property settlement agreements entered into on or after January 1, 1970. See section 4811, subdivision (c).

ments made after a final judgment of dissolution. There the postjudgment agreement of the parties as to spousal support made no mention of modifiability, although the interlocutory judgment of dissolution had precluded modification.

Two other cases, *In re Marriage of Sasson* (1982) 129 Cal.App.3d 140 [180 Cal.Rptr. 815], and *In re Marriage of Harris* (1976) 65 Cal.App.3d 143 [134 Cal.Rptr. 891], held that agreements which unequivocally provided that spousal support was nonmodifiable could not be modified although the recipient was cohabitating with a person of the opposite sex. In both cases the parties used language clearly intended to preclude modification of their agreed spousal support and the issue was whether the nonmodifiability provision of section 4811 was overcome by section 4801.5's presumption of reduced need when the recipient of spousal support cohabitates with a person of the opposite sex. Both cases held that the nonmodifiability provisions of the agreements prevented the application of section 4801.5. These decisions carry out the legislative intent that spouses have the ability by written agreement to provide for spousal support which cannot be modified by the court.

The foregoing cases did not consider what language in an agreement or order is legally sufficient to bring into play the provision of section 4811, subdivision (b), that orders for spousal support are modifiable except to the extent that a written agreement of the parties "specifically provides to the contrary." The first case to consider this issue was *In re Marriage of Kilkenny* (1979) 96 Cal.App.3d 617 [158 Cal.Rptr. 158] which held that the terms of an agreement providing it was "absolute, unconditional, and irrevocable" precluded later modification of spousal support, relying upon *Forgy* v. *Forgy* (1976) 63 Cal.App.3d 767 [134 Cal.Rptr. 75]. *Forgy* held under former section 139, the forerunner to section 4811, subdivision (b), that the use of the phrase, "absolute, unconditional, and irrevocable" in the marital settlement agreement precluded later judicial modification of spousal support.

*In re Marriage of Nielsen, supra,* 100 Cal.App.3d 874, was the second case on this subject and decided the important issue of what general boilerplate language in marital settlement agreements, if any, is sufficient to preclude modification of spousal support. *Nielsen* held where provisions for spousal support and a general release of rights[3] in a marital settlement agree-

---

[3]" 'RELEASE OF RIGHTS: 1. Except as otherwise provided in this Agreement, each party to this Agreement does hereby release the other from any and all liabilities, debts, or obligations, of every kind and character, heretofore or hereafter incurred, and from any and all claims and demands, including all claims of either party upon the other for support and maintenance as Wife or as Husband, it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects.' " (100 Cal.App.3d at p. 877 fn. 2.)

ment were each silent about the modifiability of spousal support, spousal support was modifiable because the agreement did not "specifically" provide to the contrary as required by section 4811, subdivision (b). However, the court held that a provision that the agreement did not depend upon court approval for its effectiveness[4] was a specific provision precluding modification of spousal support, relying upon *Forgy* v. *Forgy, supra,* 63 Cal.App.3d 767 [construing a similar provision of a marital settlement agreement]. Shortly thereafter *In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869 [165 Cal.Rptr. 389] held that the use of prefatory language in a marital settlement agreement providing it was "final, binding, and nonmodifiable" fulfilled the exception of section 4811, subdivision (b), and spousal support was nonmodifiable.

The most recent case discussing what language is sufficiently specific to preclude modification of spousal support was *Fukuzaki* v. *Superior Court* (1981) 120 Cal.App.3d 454 [174 Cal.Rptr. 536]. There the marital settlement agreement contained common boilerplate provisions that the purpose of the agreement was to make a final and complete settlement of all rights and obligations concerning the support of the wife,[5] that the agreement contained the entire agreement of the parties,[6] that the agreement was to be submitted to the court for incorporation into the interlocutory judgment[7] and that there was a mutual release of rights by both parties.[8] The court held

---

[4] " 'EFFECTIVE DATE: This Agreement is executed on and shall be effective from and after the 9th day of February 1972. This Agreement may, if desired, be submitted to the Court for its approval, but this Agreement shall not depend for its effectiveness on such approval, nor be affected thereby.' " (100 Cal.App.3d at p. 878.)

[5] " '4. PURPOSE OF AGREEMENT. The purpose of this agreement is to make a final and complete settlement of all rights and obligations concerning the support of wife and minor child and the custody of our minor child.' " (120 Cal.App.3d at p. 457.)

[6] " '8. AGREEMENT IS ENTIRE. This agreement contains the entire agreement of the parties on the matters it covers, and supersedes any previous agreement between us. No other agreement, statement or promise made by or to either of us or the agent or representative of either of us shall be binding on us unless it is in writing and signed by both of us or unless contained in an order of a court of competent jurisdiction. This agreement shall inure to the benefit of and be binding on each of us and the heirs, personal representatives, assigns and other successors in interest of each of us.' " (120 Cal.App.3d at p. 457.)

[7] " '10. INCORPORATION AND MERGER INTO JUDGMENT. This agreement shall be submitted to the court for incorporation and merger into the interlocutory judgment of dissolution of marriage in the pending proceeding between us.' " (120 Cal.App.3d at p. 457.)

[8] " '17. RELEASE OF RIGHTS. We agree that the following clauses shall apply to this instrument:

" '(a) Except as otherwise provided for in this instrument, each of us releases the other from any and all liabilities, debts, or obligations on our marital property that have been or will be incurred, and from any and all claims and demands, it being understood that by this present agreement we intend to settle all aspects of our marital property rights.

" '(b) We agree that any and all property acquired by either one of us from and after the effective date of this instrument shall be the sole and separate property of the one so acquiring it; and each of us waives any and all property rights in or to such future acquisitions

that these provisions, individually and collectively, were not sufficiently specific to preclude modification of spousal support where the paragraph reciting the agreement for spousal support was silent on the question of modification. The court went on to state: "The provisions for a 'final and complete' settlement coupled with a release of all obligations and a provision that the agreement is entire and binding on the parties and their heirs do not equate with the requirement of a 'specific' provision for nonmodification such as 'nonmodifiable.' [Citations.] Although no particular magic words are needed to provide the exception to nonmodifiability contemplated by section 4811, subdivision (b), some specific unequivocal language directly on the question of modification is required. The subject agreement is entirely silent with respect to the power of modification placed on the court by Civil Code section 4811. The import of the statute may not be 'avoided by drawing inferences as to the intention of the parties' from general provisions of the agreement which do not contain a specific provision concerning judicial modification." (120 Cal.App.3d at p. 458.)

A dispute on the issue of nonmodifiability of spousal support would not arise if the provision for spousal support within the marital settlement agreement stated "spousal support is nonmodifiable." Section 4811, subdivision (b), provides that spousal support is always modifiable unless the agreement of the parties specifically provides to the contrary. Careful draftsmen preparing marital settlement agreements providing for spousal support should specifically state that spousal support is nonmodifiable, if that is the agreement of the parties.

In the property settlement agreement executed by the Forcums and incorporated into their interlocutory judgment of dissolution, they provided that the agreement was entire and could not be altered, amended, or modified, except in a writing executed by both parties, and that each party except for provisions contained in the agreement released the other from any and all liabilities, obligations, and claims, including all claims of either party upon the other for support. Under the authorities previously cited these provisions are insufficient to cause spousal support to be nonmodifiable.

The Forcums' marital settlement agreement did provide it was to be effective from and after the date of execution and, although it could be submitted for approval to the court, its effectiveness did not depend upon the court's approval. Under *Nielsen* this language would be sufficient to cause spousal support to be nonmodifiable. However, the agreement also provided

---

and hereby grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same from the effective date of this instrument. . . .'" (120 Cal.App.3d at p. 457.)

for spousal support payments for the final five-year term in the amount of $1 per year. This language has historically been used for the purpose of reserving jurisdiction to modify the amount of support payments. (See, e.g., *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 741 [145 Cal.Rptr. 205], and *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 672-673 [143 Cal.Rptr. 94].) There is no reason why this language would have been included in this property settlement agreement except to retain jurisdiction to modify the amount of spousal support during the second five-year period.

█ This more specific provision for spousal support in the Forcums' marital settlement agreement, the legal effect of which is to retain jurisdiction to modify the amount of spousal support during the term provided, prevails over the more general language that the agreement was effective upon execution and did not depend upon the court's approval for its effectiveness, even though the latter standing alone would otherwise have caused spousal support to be nonmodifiable.

Charles argues that the purpose of the $1 per year provision was not to retain jurisdiction over the amount of spousal support during the second five-year period, but to extend spousal support payments for a ten-year period and thereby qualify them as periodic payments to assure their deductibility for federal income tax purposes. The Internal Revenue Code, in fact, provides the opposite since noncontingent payments do not qualify as periodic payments unless the payment period is for *more* than 10 years. (26 U.S.C. § 71(c)(2).)[9] This rule was adopted to assure the payments are in discharge of a legal obligation for support and not a settlement of property. (*Enid P. Mirsky* (1971) 56 T.C. 664; *Wright* v. *Com'r. of Int. Rev.* (7th Cir. 1976) 543 F.2d 593; *Adam* v. *United States* (D.Wyo. 1977) 429 F.Supp. 38.)

Regardless of what might be inferred from the boilerplate language, the property settlement agreement, considered as a whole, amply demonstrates that the parties anticipated and intended to permit future judicial modification of the amount of the spousal support during the 10 years the court retained jurisdiction over that issue. The trial court did not err when it so concluded.

---

[9]Charles fails to note that his spousal support obligation terminates prior to the end of the 10-year period upon the death of either party or Lillian's remarriage pursuant to section 4801, subdivision (b). This makes the spousal support payments contingent and thus treated as periodic, even though not payable for more than 10 years. Treasury Regulation section 1.71 (1)(d)(3)(i), (d)(4).

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.