[Civ. No. 68749. Second Dist., Div. Seven. Mar. 6, 1984.]

In re the Marriage of DOROTHY MORSE and GUY D. HUFFORD.
GUY D. HUFFORD, Appellant, v.
DOROTHY MORSE HUFFORD, Respondent.

**COUNSEL**

Taylor, McCord, Paul & Johnson and Emily J. Andelman for Appellant.

Christine M. Yegan for Respondent.

## OPINION

**THOMPSON, J.—** ■ In this appeal we are called upon to determine whether judicial modification of spousal support is precluded by a boiler plate provision in a marital settlement agreement which merely provides that the agreement is entire and cannot be amended, altered or modified by the parties except by a writing signed by both parties. For the reasons to follow, we have concluded that such a provision does not fulfill the exception of Civil Code section 4811, subdivision (b), to exclude judicial modification.

Guy Hufford (husband) appeals from the denial of his order to show cause for modification of spousal support of his ex-wife, Dorothy Hufford (wife).

On March 1, 1978, husband and wife filed in court a signed written "stipulation" and waiver of rights prepared by wife's counsel, covering among other things spousal support, division of property, attorney's fees and waivers. Paragraph 2 of the agreement provided for husband to pay wife spousal support of $1,200 per month for the first two years after entry of an interlocutory judgment of dissolution, and thereafter $600 per month until wife remarried or died.

Paragraph 6 recited the parties' agreement that "this court shall retain jurisdiction, after rendering the Final Judgment of Dissolution in the subject action, to determine all issues raised by this agreement and not specifically excluded from this reservation of jurisdiction."

Paragraph 10 provided: "This agreement is entire. We may not alter, amend or modify it, except by an instrument in writing executed by both of us. It includes all representations of every kind and nature made by each of us to the other. This agreement shall be binding upon and inure to the benefit of both of us, and of our heirs, administrators, executors, successors, and assigns."

On March 15, 1978, the Ventura Superior Court entered an interlocutory decree of dissolution of marriage ordering spousal support, property division, attorney's fees and execution of further documents in substantially identical language with the provisions of the stipulation. The decree did not in any way refer to the prior stipulation; nor did it contain the provisions of paragraphs 6 or 10.

On July 14, 1982, husband filed an order to show cause for modification of spousal support on grounds of alleged reduced ability to pay because of lesser income and increased obligations for a new wife and five children,

coupled with ex-wife's reduced need. The wife opposed the motion on the ground that paragraph 10 of the stipulation rendered the spousal support provision nonmodifiable.

The superior court denied husband's request for modification. The court found that the order for spousal support contained in the judgment of dissolution was not modifiable because the provision in paragraph 10 of the stipulation constituted compliance with Civil Code section 4811, subdivision (b), as to nonmodifiability of spousal support, and the provision of paragraph 6 of the stipulation did not constitute a reservation of jurisdiction to modify spousal support.

This appeal followed.

## Discussion

Civil Code[1] section 4811, subdivision (b), provides in pertinent part: "(b) The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders. *The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, . . . except to the extent that any written agreement . . . specifically provides to the contrary.*" (Italics added.)

■ Thus, there is a general rule in favor of modifiability by the court of spousal support provisions. "*The evident purposes of Civil Code section 4811 were to* dispose of the abstruse and unprofitable jurisprudence which had grown up around the concepts of integration and severability [citations] and *establish a legislatively declared social policy that contractual provisions for the support of a spouse be subject to modification by the court in the light of changed circumstances unless the parties explicitly agree to*

---

[1]Unless otherwise indicated, all statutory references are to the Civil Code. Section 4811, subdivision (b), applies to all property settlement agreements entered into on or after January 1, 1970. (See § 4811, subd. (c).)

For a discussion of contractual foreclosure of judicial modification under 1967 amendments to former section 139, the predecessor of section 4811, see *Knodel* v. *Knodel* (1975) 14 Cal.3d 752, 764-766 [122 Cal.Rptr. 521, 537 P.2d 353].

Also, for a thorough discussion of statutory and case law on pre-1967 agreements, see 2 The Cal. Family Lawyer (Cont.Ed.Bar. 1963) ch. 26; Propper, *The Judgment of Dissolution and the Agreement—Incorporation, Merger, Integration and Approval* (1975) 51 L.A. Bar J. 177; Annot., Modification of Divorce Decree—Alimony (1975) 61 A.L.R.3d 520, 595-602.

*preclude such modification.* The utility of this policy is obvious. Even in the absence of inflationary distortions, the parties to a marital settlement agreement can hardly anticipate and provide for unexpected changes of circumstance which may invalidate the expectations reflected in the agreement. Despite the public interest in reserving for judicial redetermination on the basis of changed circumstances contractual provisions for support, the Legislature left it open to marital partners to preclude judicial modification by inserting in the agreement a specific provision to that effect." (*In re Marriage of Nielsen* (1980) 100 Cal.App.3d 874, 877-878 [161 Cal.Rptr. 272].) (Italics added.)

Although an agreement making spousal support nonmodifiable by the court is not contrary to public policy (*In re Marriage of Hawkins* (1975) 48 Cal.App.3d 208, 212-213 [121 Cal.Rptr. 681]), "[u]nderlying section 4811 is the policy determination that the public interest is best served when support awards reflect changes in need or ability to pay" (*Esserman* v. *Esserman* (1982) 136 Cal.App.3d 572, 577 [186 Cal.Rptr. 329]).

In determining whether the trial court properly found that the language in the agreement herein was legally sufficient to preclude judicial modification of spousal support under section 4811, subdivision (b), we first view, from an historical perspective, cases considering that issue.

*In re Marriage of Smiley* (1975) 53 Cal.App.3d 228 [125 Cal.Rptr. 717], held that a general provision of an agreement incorporated into the dissolution decree containing language "that this agreement is entire, indivisible, and shall constitute an integrated agreement, which is not subject to modification [and] [t]his agreement may not be amended except by an instrument in writing signed by both parties" (at p. 231) rendered spousal support nonmodifiable under section 4811, subdivision (b), notwithstanding the language in the spousal support provision of the agreement that " 'the support of Wife is subject to any order, Decree or Judgment of any Court based thereon' " (at pp. 230, 233). The court held the latter language simply made it clear that contempt was a permissible method of enforcement and the former language was sufficient to satisfy the statutory requirement that written agreements specifically provide against modifiability by the court.[2]

---

[2]The full text of the general provision in *Smiley* was as follows: " '3. The parties hereto acknowledge that this agreement constitutes their entire understanding and that neither has made any promise, covenant, representation, or warranty, except as herein expressly set forth, and that this document contains all of the negotiations and agreements having been merged herein. The parties further covenant and agree that each and every promise, covenant, and undertaking herein set forth has been made as consideration for each and all of the remaining promises, covenants, and undertakings herein, and that this agreement is entire, indivisible, and shall constitute an integrated agreement, which is not subject to modification. This agreement may not be amended except by an instrument in writing signed

*Forgy* v. *Forgy* (1976) 63 Cal.App.3d 767 [134 Cal.Rptr. 75], held under former section 139 (the predecessor of § 4811) that the following language precluded later judicial modification of spousal support: " '[i]n the event that either the Husband or the Wife shall hereafter obtain a decree of absolute or limited divorce, such decree shall incorporate the provisions of this Agreement to the extent acceptable to the Court, but such decree shall in no way affect this Agreement or any of the terms, covenants, or conditions thereof, it being understood that this Agreement is absolute, unconditional and irrevocable.' " (At p. 770.)

The *Forgy* court explained: "The word 'decree' used therein impliedly includes the orders embodied in the decree and any modification of those orders. Any other interpretation would permit the court to comply with the agreement in its 'decree' but forthwith effect noncompliance therewith by a subsequent decree or order. As thus interpreted the agreement provides, a court decree incorporating its provisions and any modification thereof shall in no way affect the spousal support provisions thereof as to which the agreement 'is absolute, unconditional and irrevocable.' A modification of those provisions certainly would 'affect' them and render nugatory the understanding of the parties the agreement was absolute and irrevocable. [¶] To comply with the nonmodifiable provisions of section 139 it is not necessary the parties to a separation agreement state categorically: 'The provisions of this agreement for support are not subject to modification or magic words are needed' to provide the exception to modifiability contemplated by the statute. [Citations.]" (*Forgy, supra,* 63 Cal.App.3d at p. 770-771.)[3]

*In re Marriage of Kilkenny* (1979) 96 Cal.App.3d 617 [158 Cal.Rptr. 158], relying on *Forgy, supra,* 63 Cal.App.3d 767, held that the terms "absolute, unconditional and irrevocable" as intended in the agreement prohibited modification of spousal support by court decree. The *Kilkenny* court pointed out that the provision in its agreement that " '[i]t is the intention of the parties that this agreement, whether or not incorporated in any decree of divorce, shall be binding upon the parties, and shall be absolute, unconditional and irrevocable' " presented an even stronger showing of nonmo-

---

by both parties.' " (*Smiley, supra,* 53 Cal.App.3d at pp. 230-231.)

The spousal support provision provided: " '1. Husband shall pay to Wife, as alimony for her support and maintenance, the sum of $850.00 per month commencing September 1, 1970 and continuing monthly thereafter for five years, thence at the rate of $700.00 per month for the succeeding five years, thereafter $600.00 per month until the death or marriage of Wife. This provision for the support of Wife is subject to any order, Decree or Judgment of any Court based thereon.' " (*Id.,* at p. 230.)

[3]However, parol evidence is inadmissible to prove nonmodifiability of an agreement which contains no provision on the issue of modifiability. (*In re Marriage of Wright* (1976) 54 Cal.App.3d 1115, 1121 [126 Cal.Rptr. 894].)

difiability than did *Forgy* because the parties more clearly stated their intent. (*Kilkenny, supra,* at p. 620.)

Subsequently, *In re Marriage of Nielsen, supra,* 100 Cal.App.3d 874, addressed the issue of what general boiler plate language in agreements, if any, was sufficient to preclude judicial modification of spousal support. The court, relying upon *Forgy, supra,* held that a provision in the final paragraph that the agreement shall not depend for its effectiveness on court approval nor be affected thereby was a specific provision rendering spousal support nonmodifiable. (At p. 878.)[4]

However, the *Nielsen* court also held that neither the paragraph establishing spousal support of $214 per month "continuing for the remainder of wife's life" nor the general release of rights paragraph was sufficient to prohibit judicial modification. The court explained: "*The paragraph of the agreement dealing with spousal support is silent on the question of modification.* The general release of rights [5] . . . refers, among other items, to 'all claims of either party upon the other for support and maintenance . . . it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects.' *So far as the contractual relations of the parties are concerned, the general release of rights would be held to express an intention that the obligation of support would be governed by the agreement. [Citation.] But the release of rights provision is entirely silent with respect to the power of modification vested in the court by Civil Code section 4811.* Therefore, . . . there was *no specific provision* in the release language *precluding modification by judicial action.* Just as parol evidence may not be received to supply a missing provision against modification [citation], the statute cannot be avoided by drawing inferences as to the intention of the parties from a general 'release of rights' *paragraph which contains no 'specific' provision concerning judicial modification.*" (*Nelson, supra,* 100 Cal.App.3d at p. 878.) (Italics added.)

Soon thereafter, *In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869 [165 Cal.Rptr. 389], held that prefatory language in a marital settlement agreement, providing that " '[w]ith the exception of provisions relating to

---

[4]That provision provided in full: " '. . . . EFFECTIVE DATE: This Agreement is executed on and shall be effective from and after the 9th day of February 1972. This Agreement may, if desired, be submitted to the Court for its approval, but this Agreement shall not depend for its effectiveness on such approval, nor be affected thereby.' " (*Ibid.*)

[5]" 'RELEASE OF RIGHTS: 1. Except as otherwise provided in this Agreement, each party to this Agreement does hereby release the other from any and all liabilities, debts, or obligations, of every kind and character, heretofore or hereafter incurred, and from any and all claims and demands, including all claims of either party upon the other for support and maintenance as Wife or as Husband, it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects.' " (*Nelson, supra,* 100 Cal.App.3d at p. 877, fn. 2.)

child custody and child support, this Agreement is intended to be a final, binding, and nonmodifiable agreement between said parties'" (at p. 873), fulfilled the exception requirement of section 4811, subdivision (b) (at p. 874).

More recently, *Fukuzaki* v. *Superior Court* (1981) 120 Cal.App.3d 454 [174 Cal.Rptr. 536], discussed what language in an agreement was sufficiently specific to preclude judicial modification of spousal support. The *Fukuzaki* agreement contained boiler plate provisions that (1) the purpose of the agreement was to make a final and complete settlement of all rights and obligations concerning the wife's support; (2) the agreement contained the entire agreement of the parties; (3) the agreement was to be submitted to the court for incorporation into the interlocutory judgment; and (4) mutual release of rights by both parties.[6]

*Fukuzaki* held that these provisions, individually and collectively, were not sufficiently specific to avoid the power of the court to modify a spousal support agreement where the paragraph reciting the agreement for spousal support was silent on the question of modification.

The *Fukuzaki* court explained: "The provisions for a 'final and complete' settlement coupled with a release of all obligations and a provision that the agreement is entire and binding on the parties and their heirs do not equate

---

[6]The pertinent provisions of the settlement agreement in *Fukuzaki* provided: "'4. PURPOSE OF AGREEMENT. The purpose of this agreement is to make a final and complete settlement of all rights and obligations concerning the support of wife and minor child and the custody of our minor child.

"'8. AGREEMENT IS ENTIRE. This agreement contains the entire agreement of the parties on the matters it covers, and supersedes any previous agreement between us. No other agreement, statement or promise made by or to either of us or the agent or representative of either of us shall be binding on us unless it is in writing and signed by both of us or unless contained in an order of a court of competent jurisdiction. This agreement shall inure to the benefit of and be binding on each of us and the heirs, personal representatives, assigns and other successors in interest of each of us.

"'10. INCORPORATION AND MERGER INTO JUDGMENT. This agreement shall be submitted to the court for incorporation and merger into the interlocutory judgment of dissolution of marriage in the pending proceeding between us.

"'17. RELEASE OF RIGHTS. We agree that the following clauses shall apply to this instrument:

"'(a) Except as otherwise provided for in this instrument, each of us releases the other from any and all liabilities, debts, or obligations on our marital property that have been or will be incurred, and from any and all claims and demands, it being understood that by this present agreement we intend to settle all aspects of our marital property rights.

"'(b) We agree that any and all property acquired by either one of us from and after the effective date of this instrument shall be the sole and separate property of the one so acquiring it; and each of us waives any and all property rights in or to such future acquisitions and hereby grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same from the effective date of this instrument. . . .'" (*Fukuzaki* v. *Superior Court, supra,* 120 Cal.App.3d at p. 457.)

with the requirement of a 'specific' provision for nonmodification such as 'nonmodifiable' [citation], or 'irrevocable' [citation]. Although no particular magic words are needed to provide the exception to nonmodifiability contemplated by section 4811, subdivision (b), some specific unequivocal language directly on the question of modification is required. The subject agreement is entirely silent with respect to the power of modification placed on the court by Civil Code section 4811. *The import of the statute may not be 'avoided by drawing inferences as to the intention of the parties' from general provisions of the agreement which do not contain a specific provision concerning judicial modification.* [Citation.]" (*Fukuzaki, supra,* 120 Cal.App.3d at p. 458.) (Italics added.)

Subsequently, in 1982, in *Esserman v. Esserman, supra,* 136 Cal.App.3d 572, the court held that section 4811, subdivision (b), applies to private agreements made after entry of a final judgment of dissolution. The court pointed out that, regardless of whether support provisions in the earlier agreement and judgment were nonmodifiable, the court had authority to modify the spousal support arrangement in the later private agreement. The *Esserman* court found, citing *Fukuzaki v. Superior Court, supra,* 120 Cal.Rptr. 454, that there was no language in the later private agreement which would meet the "test of 'specific unequivocal language directly on the question of [judicial] modification.'" (*Esserman, supra,* at p. 577.)

Finally, *In re Marriage of Forcum* (1983) 145 Cal.App.3d 599 [193 Cal.Rptr. 596], is the most recent case to consider in detail what language in an agreement or order is legally sufficient to bring into play the provisions of section 4811, subdivision (b), that orders for spousal support are modifiable except to the extent that a written agreement of the parties "specifically provides to the contrary." (At p. 604.) There, as in *Nielsen,* a general provision that the agreement was effective upon execution and did not depend upon court approval for effectiveness was involved. The court held that a specific provision for a dollar-a-year spousal support payments had the legal effect of retaining the court's jurisdiction to modify spousal support. The court reasoned that a specific provision would prevail over the more general *Nielsen*-type provision to permit future judicial modification. (*Forcum, supra,* at pp. 601, 605.)

In addition to the *Nielsen*-type provision, the *Forcum* agreement *also* provided that (1) the agreement was entire and could not be altered, amended or modified except in a writing executed by both parties, and (2) each party, except for provisions contained in the agreement, released the other from any and all liabilities, obligations and claims, including all claims of either party upon the other for support. *Forcum* pointed out that "these provisions

are insufficient to cause spousal support to be nonmodifiable." (*Forcum, supra,* 145 Cal.App.3d at p. 604.)

Moreover, in an instructive observation, the *Forcum* court stressed: "A dispute on the issue of nonmodifiability of spousal support would not arise if the provision for spousal support within the marital settlement agreement stated 'spousal support is nonmodifiable.' Section 4811, subdivision (b), provides that spousal support is always modifiable unless the agreement of the parties specifically provides to the contrary. Careful draftsmen preparing marital settlement agreements providing for spousal support should specifically state that spousal support is nonmodifiable, if that is the agreement of the parties." (*Ibid.*)

■ With this historical perspective in mind, we now turn to the agreement in this case. Paragraph 10 of the agreement is a classic example of general boiler plate language which is routinely inserted in most contracts. Such a provision is obviously intended to prohibit those kinds of oral modifications of a written contract which would otherwise be permitted under section 1698. (See 14 Cal.Jur.3d, Contracts, § 222, pp. 501-503; Timbie, *Modification of Written Contracts in California* (1972) 23 Hastings L.J. 1549, 1554-1564; see, e.g., *Mitchell* v. *Mitchell* (Me. 1980) 418 A.2d 1140, 1142.)

Wife argues that under decisional law this paragraph precludes judicial modification of spousal support. Wife points to the "strikingly similar" language in *Smiley, supra,* 53 Cal.App.3d 228, which was held sufficient to cause spousal support to be nonmodifiable. However, the provision herein more closely parallels the provision in *Forcum, supra,* 145 Cal.App.3d 599, which was deemed insufficient. Thus, insofar as *Smiley* and *Forcum* can be distinguished, *Forcum* is more on point.

Furthermore, insofar as there is a conflict between the 1975 *Smiley* decision and the 1983 *Forcum* decision, we find the rationale of the latter authority more persuasive. We agree with *Forcum* that general language that an agreement is entire and may not be altered, amended or modified is insufficient to invoke the exception to the statutory rule.

Whereas the earlier cases stressed the fact that no magic words were necessary and appeared willing to infer intent to make spousal support nonmodifiable from general language, the most recent cases have emphasized the need for specific unequivocal language directly on the issue of judicial modification. We are concerned about judicial erosion of the statutory policy in favor of modifiability of spousal support and the danger of inferring a contrary intent of the parties from seemingly-innocuous boiler plate pro-

visions. (See Cal. Family L.Rep. (1980) p. 1304.) ■ Since, under section 4811, subdivision (b), the court is vested with the power to modify spousal support unless the parties specifically agree to preclude judicial modification, draftsmen should specifically state that "spousal support is nonmodifiable" in the provision for spousal support if that is the intended agreement of the parties.

■ Moreover, insufficiency of this boiler plate language to specifically preclude modification by the court is even more obvious in this case than in *Forcum* because here the language merely states that "we"—that is, the parties—may not modify the document. Nowhere in the paragraph is there a limitation, even by implication, on the court's power to do so. Thus, although the paragraph expresses an intention regarding the contractual relations of the parties, it does not comply with the requirement enunciated in *Fukuzaki* and *Nielsen* that in order to foreclose the power vested in the court by section 4811, there must be a specific provision concerning judicial modification. (*Fukuzaki, supra,* 120 Cal.App.3d at p. 458; *Nielsen, supra,* 100 Cal.App.3d at p. 878.)

In addition, a contract must be read as a whole with each part helping to interpret the other. (§ 1641.) Here, paragraph 6 of the agreement expressly retains the jurisdiction of the court to determine all issues which are not specifically excluded from the reservation. Thus, this paragraph reinforces our unwillingness to infer an intent to prohibit judicial modification of spousal support from the boiler plate language in paragraph 10. We are not persuaded by wife's argument, relying on *Smiley,* that this paragraph merely makes the agreement subject to enforcement by contempt. All such orders already are. (See §§ 4811, subd. (b); 4380.) Nor do we find any language in paragraph 10 that can reasonably be construed as a specific exclusion of the court's jurisdiction.

In any event, the agreement does not unequivocally exclude judicial modification and, therefore, is ambiguous on that issue. But any ambiguity must be resolved in favor of the general statutory rule of modifiability, rather than the exception (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224]) and against the wife whose counsel drafted the agreement (§ 1654).[7]

---

[7]Our interpretation of the agreement is not affected by the fact that paragraph 10 was not incorporated in the interlocutory decree. Section 4811 makes the question of whether the parties and the court intended to or did merge a settlement agreement into an interlocutory decree irrelevant to determine whether a court may modify spousal support payments. (*In re Marriage of Nielsen, supra,* 100 Cal.App.3d at pp. 876-877; *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 149-150 [134 Cal.Rptr. 891].)

Accordingly, the judgment (order) denying the motion to show cause re modification is reversed, and the cause is remanded to the superior court to hold a hearing on the merits.

Schauer, P. J., and Johnson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 31, 1984. Bird, C. J., Mosk, J., and Kaus, J., were of the opinion that the petition should be granted.