[No. G000451. Fourth Dist., Div. Three. Aug. 29, 1985.]

In re the Marriage of PHYLLIS MARIE and CLIFFORD L. BENSON.
CLIFFORD L. BENSON, Appellant, v.
PHYLLIS MARIE BENSON, Respondent.

COUNSEL

Thomas J. Brown and James R. Goff for Appellant.

McGuire, Bauer & Walker and William M. Walker for Respondent.

OPINION

**CROSBY, J.**—May spousal support be extended before it lapses under the terms of a judgment based on a marital settlement agreement? *Yes*.

## I

Clifford and Phyllis Benson separated in 1977 after 31 years of marriage. Each retained counsel, and within a few months a marital settlement agreement was finalized. It was approved by the court and incorporated into an interlocutory judgment of dissolution of marriage. Both documents were drafted by husband's attorney. The provision for wife's support reads as follows: "[Husband] shall pay to [wife] as and for spousal support the sum of $650.00 per month, payable on the 1st day of each month, commencing June 1, 1977, and continuing until the death of either party, [wife's] remarriage, *until modified by a court of competent jurisdiction* or until the expiration of eight (8) years, whichever first occurs. [Italics added.]"

Five years later wife, then age 59, petitioned for an increase in support. She testified she required eye surgery and extensive dental work, but had no funds and inadequate insurance coverage. Her daily living expenses were steadily increasing, and she had been forced to sell a number of household items and jewelry to meet them.

Wife, who was never employed during the marriage, also testified she had yet to obtain a job as an instructor of interior design, her chosen field. She did not feel physically capable of handling a fulltime sales position. She taught an occasional genealogy class for a city recreation department, receiving $5 per student, and earned other money by performing various jobs for friends, including painting and wallpapering. A vocational rehabilitation expert retained by husband testified wife's sociology degree qualified her for a position as a counselor in an adolescent facility and age was no barrier. An entry level position would pay between $700 and $800 per month.

Based on this evidence, the court increased the award to $1,000 per month "continuing until August 1, 1985, on which date the spousal support will be reduced to $1.00 per month, . . . and continuing until further order of Court, [wife's] remarriage, or the death of either party, whichever first occurs." Husband concedes the court had authority to modify the *amount* of his support obligation, although he argues evidence of wife's need was insufficient to justify the increase. His central contention is that the court was bound by the parties' agreement to limit spousal support to eight years and was, consequently, without jurisdiction to extend it beyond July 20, 1985, the eighth anniversary of the entry of the interlocutory judgment of dissolution.

## II

Civil Code section 4801, subdivision (d) provides, "An order for payment of an allowance for the support of one of the parties shall terminate at the

end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction." ■ Does this language require the reservation of jurisdiction to extend spousal support beyond a specified termination date to be explicit? Wife, of course, says no; and we must agree.

As early as 1977, one appellate court observed, "Section 4801 does not require the use of 'magic words' to avoid loss of jurisdiction" (*In re Marriage of Keeva* (1977) 66 Cal.App.3d 512, 519 [136 Cal.Rptr. 82]); and the matter was definitively resolved contrary to husband's position in the case of *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248]. In *Vomacka,* the Supreme Court rejected the argument that jurisdiction must be specifically retained, holding that a reservation of jurisdiction will be implied wherever it is reasonable to do so. (*Id.,* at p. 467.)

As in this case, the parties in *Vomacka* stipulated to an interlocutory judgment which required husband to pay spousal support for a certain period of time. It was to commence "September 1, 1979 [and] continue each month thereafter until further order from the Court, the death of either party, the remarriage of [wife], or August 1, 1982, whichever first occurs." The order also provided, "The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [wife's] right to request spousal support from [husband] shall terminate forever." (*Id.,* at pp. 461-462; italics deleted.) Shortly before August 1, 1982, wife petitioned for modification of the award, and the court granted an increase and eliminated the previous cutoff date of September 1, 1984. Husband appealed, claiming the court had no power to order payments beyond the termination date specified in the judgment.

But the Supreme Court disagreed; both the increase and the extension were proper. The court reaffirmed "the fundamental jurisdiction of trial courts to modify existing spousal support orders to extend support payments past the last date they can act" (*id.,* at p. 474) and articulated three basic guidelines, all of which are applicable here: ■ (1) "[O]rders providing for absolute termination of spousal support on a specified date are disfavored and will be overturned as an abuse of discretion 'unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. . . .' [Citation.] This rule is particularly applicable to lengthy marriages." (*Id.,* at p. 467.) ■ (2) "[W]here there is an ambiguity in the language of a marital property agreement it must be decided in favor of the right to spousal support." (*Id.,* at p. 469.) ■ And (3) "language in a spousal support order suggesting that modification of its terms will be permitted is routinely interpreted as a retention of the court's fundamental jurisdiction

to modify and, upon a proper factual showing, to extend the spousal support provisions contained therein." (*Id.,* at p. 470.)

With these considerations in mind, we examine the judgment in this case. It was drafted by husband's attorney and is expressly modifiable "by a court of competent jurisdiction . . . ." Husband urges this language must be interpreted to confer jurisdiction to modify the amount of the award only, not its duration. Not so: The modification provision follows the words describing the term of the order, not the amount, as would be expected if husband's construction were correct.

Moreover, even if we assumed husband's interpretation does reflect the parties' intent at the time the marital settlement agreement was executed, that intent was not expressed in the agreement or in a stipulation on the record. (Civ. Code, § 4811, subd. (b).) In other words, the court was not told of any understanding which would bar an extension of spousal support; and considering wife's lack of employment history, her age, and the length of this marriage, a conscientious judge would have refused a proposed judgment prohibiting modification of the duration of support in the absence of other satisfactory provision for wife's future security.

Extrinsic evidence proffered by husband on the question of intent, i.e., testimony that he signed the marital settlement agreement with the understanding his support obligation would be limited to eight years and a letter from wife acknowledging her acceptance of the condition, was of no moment. The marital settlement agreement, accepted by the court and incorporated into the judgment, no longer exists as an independent, enforceable contract; and parol evidence concerning the intentions of litigants is of no use in the interpretation of a judgment of a court. (*Id.,* 36 Cal.3d at p. 465; *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825 [199 Cal.Rptr. 726]; *In re Marriage of Wright* (1976) 54 Cal.App.3d 1115 [126 Cal.Rptr. 894].)

In attempting to avoid the binding precedent of *Vomacka,* our dissenting colleague relies on a meaningless distinction between the support order in that case and the one we review today. In *Vomacka,* as here, the original support obligation was to terminate on a specific date; but the *Vomacka* order also contained a second clause in which the court "retain[ed] jurisdiction regarding spousal support until [a specific date two years later,] at which time [wife's] right to request spousal support . . . terminate[d] forever." (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 462.) True, there is no similar grace period during which wife could revive an expired obligation in this order. But the *Vomacka* decision clearly was not solely pinned to that unique feature of the judgment, as the following quotation

illustrates: "In the instant case, the parties' interlocutory decree provided for its future modification not only by permitting until September 1, 1984, for [wife] to request support payments but also by stating that spousal support payments would continue '*until further order from the Court,* the death of either party, the remarriage of respondent, or August 1, 1982, whichever first occurs.' (Italics added.) It was pursuant to the first portion of this clause that [wife] properly sought modification of the decree on June 29, 1982. The interpretation of this language to permit modification of the parties' interlocutory decree extending spousal support payments beyond September 1, 1984, is supported by *In re Marriage of Keeva, supra,* 66 Cal.App.3d 512." (*Id.,* at p. 470, fn. omitted.) The words "this language" can only refer to the first portion of the *Vomacka* order, which is, of course, virtually identical to the judgment before us.

The court then emphasized the point by observing in a footnote that the power to modify includes the power to extend, while the two-year grace period created an entirely different animal, the right to obtain a new award: "Had [wife] not sought modification of the interlocutory decree before August 1, 1982, her spousal support payments would have ceased on that date. However, she nonetheless could have sought modification of the decree to provide for a new spousal support award, rather than an extension of the original award, pursuant to the language of the decree retaining jurisdiction to hear [wife's] requests for spousal support until September 1, 1984." (*Id.,* at p. 470, fn. 9.) Here, of course, wife did not have the luxury of an option because the order did not include a grace period. She had to seek modification before husband's obligation terminated or be forever foreclosed from obtaining relief, and she did. As in *Vomacka,* the reserved jurisdiction to modify was sufficient to permit the trial court to extend the duration of the order.

While compelled by *Vomacka,* our conclusion is grounded in sound public policy as well: It is wholly unrealistic to expect "the parties to a marital settlement agreement [to] anticipate and provide for unexpected changes of circumstances which may invalidate the expectations reflected in the agreement." (*In re Marriage of Hufford, supra,* 152 Cal.App.3d 825, 829.) Flexibility in the administration of judgments which will affect the lives of the parties far into the future, especially after very lengthy marriages, is to be encouraged; in few other fields do the equities scream quite so loudly as they do in family law. Moreover, the state's own interests are involved: The elderly and infirm and those otherwise unable to support themselves should not become burdens on society where it is just and proper for former spouses to provide support.

## III

■ Husband next contends the court abused its discretion in increasing the amount of the order from $650 to $1000 per month. He argues wife was not diligent in her efforts to obtain a job and there was insufficient evidence of the need for an increase.

As to the first point, we find nothing in the record to indicate wife unreasonably delayed in seeking employment or wilfully refused to accept alternative employment options. She had never worked during 31 years of marriage, and only one year had elapsed since she completed her interior design training.

Nor are we persuaded wife failed to justify the increase. ■■ Appellate courts are loathe to interfere with the trial court's broad discretion to determine the proper amount of spousal support (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633-634 [120 Cal.Rptr. 654]), and it was not disputed that wife's net monthly income was considerably below her monthly expenses. Also, her medical insurance would reimburse but a fraction of the cost of her anticipated eye surgery, and she had no insurance to cover needed dental work. On the other hand, husband's income rose from $36,000 to approximately $70,000 in the five years since the interlocutory judgment was entered. The increase in spousal support was hardly an abuse of discretion.

The judgment is affirmed. Wife is entitled to costs on appeal and may apply to the trial court for attorneys fees as well. (See, e.g., *In re Marriage of Newport* (1984) 154 Cal.App.3d 915 [201 Cal.Rptr. 647].)

Trotter, P. J., concurred.

**SONENSHINE, J.,** Dissenting.—I respectfully dissent. I do not believe the court had jurisdiction to extend the support obligation beyond the specified termination date.[1]

Unless jurisdiction is retained, the court loses its ability to extend support. (Civ. Code, § 4801, subd. (d).) And *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248] did not repeal this legislative mandate. The *Vomacka* court simply found the underlying order *implied* a retention of jurisdiction. No such interpretation can be made here.

---

[1] I do, however, agree with the majority opinion insofar as it concludes the trial court properly increased the amount of the support.

There are, of course, similarities between the *Vomacka* order and the present one: each provides for the payment of a specified amount of support pending the first to occur of four contingencies, i.e., death of either party, remarriage of wife, modification by court,[2] or a specified date. Thus, the trial court in each case had jurisdiction to modify the amount of the award at any time prior to the specified date.

But there is one critical distinction: the *Vomacka* order contains an *express* reservation of jurisdiction "regarding spousal support" until a date certain, at which time the wife's "right to request spousal support shall terminate forever." It is this language, "suggesting that modification of [the order's] term [would] be permitted" (*Vomacka,* at p. 470) which the *Vomacka* court "interpreted as a retention of the court's fundamental jurisdiction to . . . extend the spousal support provisions contained therein." (*Ibid.*)

Thus, jurisdiction to extend the duration of support was derived from this explicit reservation of jurisdiction terminating on September 1, 1984, and not from the "further order of court" contingency. As the *Vomacka* court noted: "Had [wife] not sought modification of the interlocutory decree before August 1, 1982, her spousal support payments would have ceased on that date. However, she nonetheless could have sought modification of the decree to provide for a new spousal support award, rather than an extension of the original award, *pursuant to the language of the decree retaining jurisdiction to hear [wife's] requests for spousal support until September 1, 1984.*" (*In re Marriage of Vomacka, supra,* at p. 470, fn. 9, italics added.) The court further observed the trial court's "retention of jurisdiction until September 1, 1984, to hear [wife's] requests for spousal support implies that the court retained the power to grant such requests. If the court was without jurisdiction to award spousal support past September 1, 1984, its retention of jurisdiction until that date to hear [wife's] requests for support would be meaningless. [Citations.]" (*Id.,* at p. 471.)[3]

---

[2]The contingency, "until modified by a court of competent jurisdiction," as used in the Bensons' order, is virtually the same as "until further order from the court." (See *In re Marriage of Vomacka, supra,* at p. 470.)

[3]The majority holds the Supreme Court in *Vomacka* relied on the first part of the underlying support order as the basis for extending jurisdiction. My colleagues suggest *In re Marriage of Keeva* (1977) 66 Cal.App.3d 512 [136 Cal.Rptr. 82] is authority for this analysis. However, neither the Supreme Court's own words nor the facts in *Keeva* support the majority's conclusion.

In *Keeva,* the trial court modified a support order making the amounts payable through November 15, 1975. The order also continued the matter for another hearing on that date. But the hearing was further continued until December 10. Husband argued because the court had not specifically retained jurisdiction beyond November 15, 1975, it could not order any further support. But that argument was rejected. "It is thus apparent that although the court did not use the words that it 'retains jurisdiction,' there was no intent to limit the duration of the period of payment for support." (*Id.,* at p. 518.) In other words, the date itself was

This express reservation of jurisdiction has no counterpart here. Nor is there *any* language from which fundamental jurisdiction to extend support could be implied. Thus, Phyllis' *right to receive* spousal support terminated upon the first to occur of the contingencies specified in the order, but in no event later than the order's eighth anniversary.

Civil Code section 4801, subdivision (d), mandates the loss of jurisdiction to extend support unless it is retained in the original order. Such retention need not be explicit. It must, however, in some fashion, exist. It cannot be created by appellate fiat.

---

not controlling, but rather the manifest intent of the court. Jurisdiction was not explicitly retained but the intention to do so was expressed.

The *Vomacka* court's reliance on the second part of the underlying order is clear. "As in *Keeva,* the instant trial court's retention of jurisdiction until *September 1, 1984,* to hear Joyce's requests for spousal support implies that the court retained the power to grant such requests." (*In re Marriage of Vomacka, supra,* 36 Cal.3d 470, 471, italics added.)