[No. D004649. Fourth Dist., Div. One. Sept. 17, 1987.]

In re the Marriage of NANCY L. and LEE B. HARBACH.
NANCY L. HARBACH, Respondent, v.
LEE B. HARBACH, Appellant.

COUNSEL

L. Hunter Tracht for Appellant.

Sharron Voorhees for Respondent.

OPINION

**BUTLER, J.**—Lee Brett Harbach and Nancy Lynn Harbach married August 17, 1974, separated November 18, 1980, and their marriage was dissolved by an interlocutory decree entered August 3, 1982. The decree provided for support of the three children of the marriage, division of property and the usual terms attendant upon divorce. The decree required Lee to pay $2,000 monthly spousal support "until July 14, 1984 at which time [his] obligation to pay spousal support . . . shall cease and terminate."

Lee and Nancy then stipulated to and the court ordered on December 29, 1982, a modification of the decree dividing and awarding community property, modifying child support and revising spousal support requirements. Paragraph 7 of the modified decree required Lee to pay Nancy $2,000 monthly spousal support "until the death of either party, [her] remarriage, or December 31, 1986, whichever first shall occur." Paragraph 7 then recites the payment of spousal support "is premised" upon the expectation Nancy would obtain an advanced degree, set out her academic obligations to enroll for at least nine credit hours for each semester, required a report to

Lee about her progress and provided that her failure to take the minimum hours would be a change of circumstance, entitling Lee to move for support modification. Paragraph 7 concludes: "Other than as set forth in this paragraph, spousal support shall be non-modifiable both as to term and amount."

January 28, 1986, before the termination of Lee's spousal support obligation as modified to December 31, 1986, Nancy petitioned the court for a further modification of the decree as to child custody, child support, spousal support, medical and psychological expenses, babysitting costs and tutoring costs. Nancy requested an extension of the termination date extended to December 31, 1986, by the modification, noting that extension was premised on the expectation she would have received her graduate degree.[1] She pointed out an internship of 3,000 hours was required to secure her certificate as a family and child counselor, saying: "Although I have been continuously pursuing training as a counselor since I began school, the requirement of an internship was not known to [Lee] or me at the time we stipulated to the spousal support issue. The internship is an essential part of my education and ability to be employed. In spite of the fact that [Lee] and I stipulated to the non-modifiability of the termination date for spousal support, I request the Court extend the payments through the duration of my internship. At that time, I will be employable and able to support myself."

Lee filed a declaration in response and an order to show cause to modify and terminate the stipulated spousal support for Nancy's failure to prove enrollment for a graduate degree, and to reinstate the original decree entered August 3, 1982, which called for spousal support termination on July 15, 1984.

The court extended the term of spousal support: "1. The term of spousal support shall be extended from the termination date of December 31, 1986 to April 30, 1987, so as to allow [Nancy] to matriculate with her Masters Degree in psychology." The court ordered Lee to pay Nancy's attorney $4,000 toward her attorney fees, denied Lee's request to rescind the December 29, 1982, modification and made further orders not relevant here.

Lee appeals, contending the decree as modified December 29, 1982, was nonmodifiable thereafter and the court had no jurisdiction to extend sup-

---

[1] The court found Nancy would receive her degree as of April 30, 1987, and noted Lee's concession the December 31, 1986, termination date was based on the expectation the degree would be awarded by that date. The court rejected Nancy's request to extend spousal support over the 3,000 hours of internship.

port beyond December 31, 1986. He also argues abuse of discretion in awarding attorney fees.

## I

Paragraph 7 of the modified decree purports to provide a one-way street for modification or termination by Lee upon the happening of events: "[Lee's] payment of spousal support for the period July 15, 1984, through December 31, 1986, is premised upon the expectation that [Nancy] will be attending an accredited college and/or graduate school to obtain an advanced degree. [Nancy], between such dates, shall be required to attend and take 9 credit hours per semester (fall & spring) unless prevented from doing so by the physical illness of herself or any of the minor children of the parties in her custody or other justifiable cause. [Nancy] shall be required, during such prescribed period, to inform [Lee] whenever she is not enrolled nor taking at least 9 credit hours during any semester. In addition, [Nancy] shall be required to submit to [Lee] at the end of each semester proof in writing that she attended and took at least 9 credit hours during that semester. Failure to enroll or take a minimum of 9 credit hours per semester at an accredited college or graduate school shall be a presumed change of circumstances which will entitle [Lee] to move the court for a modification of spousal support, and the court retains jurisdiction to modify or terminate spousal support if no justifiable case exists for [Nancy's] taking less than nine units or her non-enrollment during the prescribed period. Other than as set forth in this paragraph, spousal support shall be non-modifiable both as to term and amount." As we have seen, when Nancy moved to extend the December 31, 1986, termination date, Lee responded by seeking modification and termination for Nancy's failure to prove enrollment. The court denied Lee's request. The court thus found Lee did not establish any basis for modification or termination for Nancy's failure to follow paragraph 7 requirements for enrollment.

We consider the effect of the final sentence of paragraph 7: "Other than as set forth in this paragraph [retention of jurisdiction to modify or terminate if Nancy takes less than nine units or fails to enroll], spousal support shall be non-modifiable both as to term and amount."

In *In re Marriage of Foreman* (1986) 183 Cal.App.3d 129 [228 Cal.Rptr. 4], we considered the effect of an interlocutory judgment which incorporated a settlement agreement with spousal support. There, $1,300 monthly spousal support was payable until the wife remarried, died or a " 'total of ten years, whichever event first occurs.' " (*Id.* at p. 131.) Thereafter, support reduced to " '$1.00 per year for an additional one year, and then terminate.' "

"'The said spousal support payments provided hereunder, shall not be modifiable under any circumstances until June 30, 1977. Thereafter, said support payments may be modified by the court on a proper showing by either party.'" (*Ibid.*) In the 11th year, wife requested modification and extension. We affirmed an increase in the spousal support and denial of the extension beyond the eleventh year. We construed Civil Code[2] section 4801, subdivision (d) as an express legislative limitation on the power of a court to modify under section 4811.

"Assuming the language regarding jurisdiction to modify in section 4811 otherwise could be subject to that interpretation, the language in section 4801, subdivision (d) is an express legislative limitation on that power, requiring reservation of jurisdiction to be stated by specific language in the decree of dissolution to extend the period of support. Otherwise, there would be no purpose for that section, because it always would be ineffective to prevent extensions in light of the court's inherent power to modify pursuant to section 4811. In order to make the statutory scheme rational, section 4811 must be deemed to refer only to the power to modify the terms of the support order for the time period designated in the original order of support, and the ability to extend that period of time deemed legislatively limited by section 4801, subdivision (d) to those situations where there has been an express reservation of jurisdiction in the original decree." (*Id.* at p. 134.)

Nancy argues *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248], and *In re Marriage of Benson* (1985) 171 Cal.App.3d 907 [217 Cal.Rptr. 589], both of which we discussed and distinguished in *Foreman,* are applicable here. The decree in *Vomacka* after awarding spousal support until further order of the court, death of either party, the wife's remarriage, or August 1, 1982, whichever first occurs, reserved jurisdiction in the court "'regarding spousal support until September 1, 1984, at which time [wife's] right to request spousal support from [husband] shall terminate forever.'" (*Id.* at pp. 461-462, their brackets and italics.) The court held the retention of jurisdiction provision ambiguous and held the decree reserved jurisdiction in the court to extend the period of spousal support, all as we discussed in *Foreman.*

The decree in *Benson* called for spousal support commencing June 1, 1977, and "'continuing until the death of either party, [wife's] remarriage, *until modified by a court of competent jurisdiction* or until the expiration of eight (8) years, whichever first occurs.'" (171 Cal.App.3d at p. 910, their brackets and italics.) The Court of Appeal, relying on *Vomacka,* found the

---

[2] All statutory references are to the Civil Code unless otherwise specified.

reservation of jurisdiction to modify the decree before the expiration of eight years empowered the court to extend the spousal support term.

■ Nancy contends the inclusion in paragraph 7 of Lee's right to request modification or termination if she fails to enroll or carry nine units continues jurisdiction in the court to extend the term to accomplish the premise on which the modification rests, i.e., attainment of the graduate degree.

This contention has merit. The decree here, taken as a whole, contemplated Nancy's attainment of an advanced degree. The timespan estimated by the parties within which the degree could be obtained fell short by four months. The court made a finding Lee and Nancy both contemplated the degree would be awarded by December 31, 1986. In construing the modification decree, the court took into account this mutual mistake of the parties and extended the spousal support by four months to effectuate the intent of the parties. Unlike *Foreman,* jurisdiction was retained by the court to modify the decree in the event Nancy failed to carry out her scholastic obligations. That retained jurisdiction supports the extension of the term to carry out the intent of the parties as expressed in paragraph 7. (See *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 673 [143 Cal.Rptr. 94].)

## II

Lee's attack on the $4,000 award of attorney fees is meritless. The award was authorized by statute (§ 4370) and substantial evidence supports it.

Order affirmed.

Todd, J., concurred.

**WIENER, Acting P. J.**—I dissent. The majority rest their decision to affirm the order extending Lee's obligation to pay spousal support on what they describe as the parties' mutual mistake. They say, "In construing the modification decree, the court took into account this mutual mistake of the parties and extended the spousal support by four months to effectuate the intent of the parties. Unlike *Foreman,* jurisdiction was retained by the court to modify the decree in the event Nancy failed to carry out her scholastic obligations." (Maj. opn. *ante.*) Although the logic of this reasoning may be compelling there is no legal or factual basis for its application. Even Nancy does not suggest the trial court's power to modify spousal support is tied to the parties' mutual mistake as to when she was to obtain her graduate degree. She argues the trial court's power to modify rests on two separate theories. The first is based on *Vomacka* and its progeny. The second is on a

unique cost/benefit analysis where the error is not prejudicial because the cost to Lee of four months additional support is insignificant compared to his benefits when he no longer is obligated to pay spousal support.

This latter argument asks us to not only ignore the law, but it turns the rule of prejudicial error on its ear. Our responsibility is to first determine whether the trial court erred, and if so, whether that error is prejudicial. Prejudice frequently will be determined from the nature of the error itself. The case before us is illustrative. Here, I believe the error is so fundamental, i.e., the court acted in excess of its jurisdiction, its order is necessarily prejudicial. And in any event even though the dollar has been declining, I think $8,000 can hardly be viewed as de minimis.

Obviously I believe *In re Marriage of Foreman* (1986) 183 Cal.App.3d 129 [228 Cal.Rptr. 4] controls this case and our obligation to follow precedent overrides whatever personal view I or the other members of this panel may have as to the fairness of what the trial court attempted to accomplish.

Lee and Nancy negotiated a spousal support agreement which could be modified only on certain conditions. The parties said that except as to those conditions "spousal support shall be non-modifiable as to term and amount." I believe their intent is clear. Their earlier dealings caused Lee to have a jaundiced view of his wife's good faith in pursuing her education. He wanted to be assured that if without good cause she failed to attend her scheduled classes he would be able to either modify his spousal support obligation or terminate it entirely. There is nothing in the law which invalidates this provision. As a result of the give and take of negotiations the parties can agree to limit the circumstances in which spousal support can be modified. There is also nothing in the law to preclude those circumstances from affecting only one of the parties and not both. A unilateral change of circumstances rather than bilateral is a permissible bargain.

Here the parties through their counsel agreed that Lee would be able to modify spousal support for specified reasons. The parties agreed that Nancy would not have a comparable right. The fact that I think I know the reasons why Lee insisted on this bargain is unimportant. What is important is that our analysis of the trial court ruling must rest on the express language of the agreement and not on our retrospective belief of what may be in the parties' best interests. Here the *only* interpretation of the agreement is that Nancy gave up her right to modify spousal support in exchange for the promises contained in their stipulation. To affirm the trial court ruling the majority not only overlook the text of the parties' stipulation, but reject the reasonable inference that if the parties wanted Nancy to retain the right to modify spousal support their agreement would have so provided.

Even if I am wrong in my conclusion that Nancy did not have the right to modify spousal support, I could not join the majority in this case. Modification of spousal support orders rests on legal doctrine—change of circumstances. Here there are none. The only change of circumstances is the parties' mutual mistake, an event which occurred before and not after the spousal support order. By definition the requisite change of circumstances must involve events which follow the order sought to be modified.

Moreover, there is nothing in this record to suggest the final date of support, December 31, 1986, was anything other than a carefully negotiated term which we must honor. While Nancy may have erred in computing the termination date of her educational quest, her unilateral error cannot be construed as a mutual error and also a change of circumstances in the context of the trial.

Appellate courts should be chary in remaking negotiated bargains based upon personalized retrospective perception of past events. Parties who negotiate their contracts do so based on *their* prospective view of what *they* think is in *their* best interest. Whether a party's prospective view is accurate is inherent in the risk associated with the negotiating process. When a court remakes a bargain at the request of one party for no other reason than that party's later dissatisfaction with the agreement, a court not only diminishes the bargaining process itself, but strays from the judicial restraint essential to a rational judicial process. Thus my concern in this case is not merely with an alleged $8,000 error. I am concerned because the majority have failed to respect the integrity of the contract-making process and have decided this case on subjective considerations which should be irrelevant to the dispute resolution process.

Because of my conclusion the court prejudicially erred in modifying the spousal support order, I would also reverse the order for attorneys' fees.