[No. B038780. Second Dist., Div. Seven. May 11, 1990.]

In re the Marriage of JEANNE and ROBERT H. ANINGER.
ROBERT H. ANINGER, Appellant, v.
JEANNE ANINGER, Respondent.

**COUNSEL**

Allen E. Botney for Appellant.

Jack I. Esensten for Respondent.

## OPINION

**JOHNSON, J.**—Robert H. Aninger appeals from an order increasing his spousal and child support payments, dividing the proceeds of the sale of the family residence between him and his ex-wife and ordering him to pay the attorney's fees of his ex-wife incurred in the proceeding.

We reverse the order as to the modification of spousal support and modify the award of attorney's fees. In all other respects we affirm.

### FACTS AND PROCEEDINGS BELOW

The Aningers' marriage was dissolved in September 1984. The judgment of dissolution incorporated the terms of a marital settlement agreement between the parties covering support payments and sale of the family residence, among other things. As to support, the agreement called for Mr. Aninger to pay family support in the sum of $290 per week ($1,256 per month) from August 1984 through August 1989 and $174 per week ($753 per month) from September 1989 through June 1994 at which time the support would be reduced to zero with the court retaining jurisdiction over spousal support without any termination date. As to sale of the family residence, the agreement provided the residence would be listed for sale no later than June 1989. If Ms. Aninger elected to sell the residence before June 1987, the proceeds were to be divided equally between the parties. If she elected to sell between June 1987 and June 1988, the proceeds were to be divided 45 percent to Ms. Aninger and 55 percent to Mr. Aninger. And, if Ms. Aninger elected to sell between June 1988 and June 1989 the proceeds were to be divided 40 percent to her and 60 percent to Mr. Aninger.

In March 1988, Ms. Aninger petitioned for an order increasing the family support payments to $750 per month per child ($1,500 per month) and $750 per month spousal support (a total of $2,250 per month). She also requested the court to divide the proceeds from the sale of the family residence 45 percent to her and 55 percent to Mr. Aninger. In support of the modification, Ms. Aninger alleged the two minor children are older and their needs are greater than when the original order was made in September 1984 and Mr. Aninger "has much greater income and earning power now."

The Aningers were married for 20 years and had 2 children, Susan born in November 1970 and Michael born in February 1976. Mr. Aninger's income and expense declaration showed net monthly disposable income of $4,744 and monthly expenses of $4,007 not counting his support payments. Ms. Aninger's income and expense declaration showed a net monthly disposable income of $1,198 plus $1,255 per month family support payments

from Mr. Aninger for a total of $2,453 per month; her monthly expenses totalled $2,689.

At the hearing, Ms. Aninger testified her income and expenses had both increased since filing her financial statement. Her new gross income was $22,500 per year which the court calculated as $1,503 net per month. The family residence had been sold and she had purchased a condominium for $280,000 using $140,000 of the proceeds from sale of the family residence as a down payment. Her mortgage payment was now $1,002 per month plus $190 a month condominium fee and $233 per month property tax.

In support of her claim to 45 percent of the proceeds from the sale of the residence Ms. Aninger introduced a letter written by her attorney to Mr. Aninger dated May 27, 1988, accompanied by real estate listing documents for the family residence. The letter stated, in part, "It is necessary that the documents be signed and the listing effectuated pursuant to the terms of the Court Order as to sales between June of 1987 and June of 1988."

Ms. Aninger's counsel presented documentation showing attorney's fees of $6,500 plus costs of $164.50.

After receiving the evidence and hearing argument of counsel, the trial court modified the support order to $629 per month per child ($1,258 per month) and $705 per month for spousal support to continue until Mr. Aninger's death, Ms. Aninger's remarriage or further order of court. The court ordered the proceeds from the sale of the family residence divided 55 percent to Mr. Aninger and 45 percent to Ms. Aninger. Mr. Aninger was ordered to pay Ms. Aninger's attorney's fees and costs in the sum of $6,664.50.

Mr. Aninger filed a timely appeal.

### DISCUSSION

### I. THERE WAS NO SHOWING OF A CHANGE OF CIRCUMSTANCES TO JUSTIFY MODIFICATION OF THE SPOUSAL SUPPORT ORDER.

Orders modifying support will not be set aside on appeal without a clear showing of abuse of discretion. (*In re Marriage of Hopwood* (1989) 214 Cal.App.3d 1604, 1607 [263 Cal.Rptr. 401].) Although the trial court possesses broad discretion in modifying spousal support orders, (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]), it abuses that discretion when it modifies the order in the absence of a "material change of circumstances" (*Hopwood, supra,* 214 Cal.App.3d at

pp. 1607-1608), or where its findings are not supported by substantial evidence. (*In re Marriage of Norvall* (1987) 192 Cal.App. 3d 1047, 1060 [237 Cal.Rptr. 770].)

■ Where, as here, the record lacks express findings of fact or a statement of decision all intendments favor the ruling below and we must assume the trial court made whatever findings are necessary to sustain its order. Of course, each implied finding must be supported by substantial evidence. The evidence is viewed in the light most favorable to respondent who is entitled to the benefit of every reasonable presumption. We accept as true all evidence favorable to respondent and discard contrary evidence as unaccepted by the trier of fact. (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 548 [251 Cal.Rptr. 370].)

■ The Aningers entered into a marital settlement agreement covering spousal support, and this agreement was "accepted, reviewed, and approved" by the trial court and incorporated into the judgment of dissolution. Such a marital settlement agreement is a contract between the parties. (See, e.g., Civ. Code, § 4811, subd. (b); *In re Marriage of Hentz* (1976) 57 Cal.App.3d 899, 901 [129 Cal.Rptr. 678]; *In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071, 1081 [225 Cal.Rptr. 219]; *Modglin* v. *Modglin* (1966) 246 Cal.App.2d 411, 415 [54 Cal.Rptr. 582].) Where the agreement permits modifications, those modifications require a showing of a change in circumstances. (*Hentz, supra,* 57 Cal.App.3d at p. 901; *In re Marriage of Norvall, supra,* 192 Cal.App.3d at p. 1063, fn. 8.) Moreover, in determining what constitutes a change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the agreement. (*Modglin, supra,* 246 Cal.App.2d at p. 415; *Hentz, supra,* 57 Cal.App.3d at p. 901; *In re Marriage of Zlatnik* (1988) 197 Cal.App.3d 1284, 1287 [243 Cal.Rptr. 454]; *In re Harbach* (1987) 195 Cal.App.3d 629, 634 [240 Cal.Rptr. 698]; *Rabkin, supra,* 179 Cal.App.3d at p. 1080.)

Thus, the trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement. The court may not simply reevaluate the spousal support award. In *Modglin, supra,* 246 Cal.App.2d at page 415, the court explained: "We have no right to assume that the parties when they made their stipulation for alimony of $200 per month for one year, and $100 per month thereafter, did not know precisely what they were doing. We have no way of knowing what multitude of factors, or even what single consideration, entered into those stipulations. There is no suggestion, even remote, that any of them were illegally induced.

"In these circumstances, even though respondent's business has spread beyond the County of San Bernardino and his business and net earnings are

probably geometrically increased over and above what they were at the time of the interlocutory decree, we do not feel justified, on the showing here made, in reopening the divorce litigation, and in effect setting aside a bargain originally made in open court under the supervision of a superior court judge."

The decisions in *Hentz*, *Rabkin* and *Harbach, supra*, are illustrative of the court's duty to give effect to the parties' expectations as reflected in the marital settlement agreement.

In the *Hentz* case, the husband and wife entered into a marital settlement agreement providing the husband would support the wife until he died or she remarried. Before the occurrence of either event the husband initiated proceedings to modify the support order by terminating spousal support. The appellate court affirmed denial of the modification stating: "The court, by including the stipulation in its own decree, presumes that the parties arrived at a fair support award, after arm's-length negotiations, that took into consideration all of the circumstances as they then existed. The court thereafter should not permit a party to change this contractual arrangement, absent changed circumstances, as it would allow a party to repudiate and change a legal contract for no reason at all. Because marital support provisions in property settlement agreements are modifiable by law . . . it is necessary to give some legal protection to the original agreement, otherwise it is meaningless. The 'changed circumstances' rule provides this protection." (57 Cal.App.3d at pp. 901-902) (Citation omitted.)

In *Rabkin,* the court reversed an order which reduced the monthly spousal support the husband had agreed to pay because the reduction was not for a reason contemplated in the agreement; in fact it violated the terms of the agreement. The parties had agreed the wife's spousal support would be $1,500 per month and the sale of the family residence would not constitute grounds for a change in spousal support. Nevertheless, the trial court granted the husband a reduction in spousal support based, in part, on the income the wife derived from sale of the family residence. Reversing the order, the appellate court pointed out: "As for the sale of the family residence and wife's resulting right to receive approximately $1,800 in monthly mortgage payments, such right constituted the single major asset awarded to wife as her one-half share of the community property. The parties' agreement, which was very carefully drafted by skilled attorneys, provided that wife would receive her share of the community property *and* spousal support. It makes no more sense to reduce wife's spousal support because she received her rightful share of the community property than it would to increase wife's spousal support because husband received his rightful share of the community property. . . . In any event, the parties' agreement expressly

provided that the sale of the marital residence could not be considered a change in circumstances justifying a modification of spousal support." (179 Cal.App.3d at p. 1081.) (Italics in original, fn. omitted.)

In *Harbach,* the court affirmed a modification extending by four months the termination date for spousal support agreed to by the parties. The court reasoned: "The decree here, taken as a whole, contemplated Nancy's attainment of an advanced degree. The time span estimated by the parties within which the degree could be obtained fell short by four months. The court made a finding Lee and Nancy both contemplated the degree would be awarded by December 31, 1986. In construing the modification decree, the court took into account this mutual mistake of the parties and extended the spousal support by four months to effectuate the intent of the parties. That retained jurisdiction supports the extension of the term to carry out the intent of the parties as expressed in paragraph 7." (195 Cal.App.3d at p. 634.)

■ The policy of this state is to encourage a supported spouse to achieve self-support as quickly as possible and to the extent of her or his ability. This policy is reflected in Civil Code section 4801 which provides the court, in setting spousal support, shall consider, among other things, the "marketable skills of the supported spouse" and the "ability of the supported spouse to engage in gainful employment." The policy of encouraging self-support is also evident in numerous cases dealing with questions of spousal support including, for example, *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 911 [243 Cal.Rptr. 179]; *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749 [189 Cal.Rptr. 622]; and *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 419-421 [136 Cal.Rptr. 635]. (See also Hogoboom & King, Cal. Practice Guide, Family Law (1989) at [¶] 6:113, p. 6-106.)

■ In the case before us the parties agreed to a "step-down" order decreasing support at specified intervals. (See, e.g., *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 739 [145 Cal.Rptr. 205].) These orders are fashioned to encourage self-support and rest on the assumption the supported spouse will have an increased ability to provide her own support at the time of each step-down. (*In re Marriage of Sheridan, supra,* 140 Cal.App.3d at p. 748.) This assumption by the parties in entering into the agreement provides the basis for determining whether there has been a change in circumstances. If these assumptions fail to materialize on schedule, despite reasonable efforts on the part of the supported spouse, the court may find a change of circumstances justifying modification of the support order. (See *Sheridan, supra,* 140 Cal.App.3d at p. 748; *In re Marriage of Schaffer* (1984) 158

Cal.App.3d 930, 935 [205 Cal.Rptr. 88]; *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 365 [236 Cal.Rptr. 543].)

█ The only change in circumstances that would open the door to modification of Ms. Aninger's support order would be a showing that despite her reasonable efforts she was unable to support herself. Other factors such as Mr. Aninger's salary were irrelevant. (*Schaffer, supra*, 158 Cal.App.3d at p. 934.) These factors, presumably, were considered by Ms. Aninger and her counsel in negotiating the marital settlement agreement. Now, four years later, the trial court could not simply discard the negotiated agreement and design a new one more to its liking. A change in circumstances must first be found. (Cf. *In re Marriage of Norvall, supra*, 192 Cal.App.3d at p. 1063, fn. 8; *Modglin v. Modglin, supra*, 246 Cal.App.2d at p. 415.)

Ms. Aninger neither alleged nor proved any change in circumstances affecting her ability to become self-supporting. Her application alleges the changes in circumstances to be: "[t]he minor children are older and their needs are greater than when the order was made in 1984" and Mr. Aninger "has much greater income and earning power now." Neither of these alleged changes in circumstance were relevant to *her* support. The needs of the children are a separate issue. The fact her ex-husband's income has increased had no bearing on *her* ability to earn a living (see *Schaffer, supra*, 158 Cal.App.3d at p. 934), and is irrelevant absent a showing, not made here, the initial support order was inadequate to meet her needs due to Mr. Aninger's inability to pay. (See, e.g., *In re Marriage of Hopwood, supra*, 214 Cal.App.3d at p. 1607.) Furthermore, the evidence showed Ms. Aninger's employment income was increasing. In fact, it increased $300 per month between the time she applied for modification and the hearing on her request.

█ The only factor adversely affecting Ms. Aninger's ability to meet her needs was an increase of $783 per month in her housing cost resulting from her purchase of a $280,000 condominium. When Ms. Aninger lived in the family residence her housing costs were $642 per month. When the residence was sold, Ms. Aninger received approximately $166,000 and another $19,000 was held in escrow pending resolution of the dispute over the distribution percentages. (This amount was subsequently awarded to Ms. Aninger.) Ms. Aninger used $140,000 of the proceeds for a down payment on the condominium resulting in a mortgage payment of $1,002 per month, a condominium fee of $190 a month and property tax of $233 per month.

It cannot be said the increased housing cost was an unanticipated occurrence justifying an increase in spousal support. The parties agreed the fami-

ly residence would be listed for sale no later than June 1989. Thus, one of the assumptions built into the parties' settlement agreement was that Ms. Aninger would be moving into a new residence sometime after the dissolution of the marriage. Presumably this circumstance was considered by the parties in establishing the support level. (See, e.g., *Bratnober v. Bratnober* (1957) 48 Cal.2d 259, 262-263 [309 P.2d 441]; *Hentz, supra*, 57 Cal.App.3d at p. 901; *Rabkin, supra*, 179 Cal.App.3d at p. 1080.) Furthermore, it would defeat the intent and reasonable expectations of the parties that Ms. Aninger would achieve self-support if the court allowed her to manufacture a change in circumstances by going into debt far beyond her means. Ms. Aninger received $185,000 from the sale of the family residence to use toward purchase of a new residence. It is beyond doubt Ms. Aninger could have outright purchased adequate living quarters for that amount of money or made a sufficient down payment to bring her housing expense within her means.

By undertaking a debt beyond her reasonable means to pay presently or in the foreseeable future, Ms. Aninger failed to make a reasonable effort to become self-supporting. Such a failure does not constitute a change of circumstances justifying an increase in spousal support. (Cf. *Sheridan, supra*, 140 Cal.App.3d at p. 749; *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1262-1264 [264 Cal.Rptr. 210].)

Even assuming a $280,000 condominium is more in keeping with Ms. Aninger's standard of living during marriage than a $185,000 condominium, the settlement agreement did not contemplate Ms. Aninger would be able to maintain her former standard of living. The level of support agreed to and its termination after 10 years clearly does not contemplate at the end of 10 years Ms. Aninger, a secretary, would be earning as much as Mr. Aninger, a corporate executive.

■ In the case before us, the trial court ignored the threshold question of whether there had been a change in circumstances and proceeded to remake the support order according to its own ideas of what was fair and reasonable. "When a court remakes a bargain at the request of one party for no other reason than that party's later dissatisfaction with the agreement, a court not only diminishes the bargaining process itself, but strays from the judicial restraint essential to a rational judicial process." (*Harbach, supra*, 195 Cal.App.3d at p. 636 (Wiener, J., dis.).)

Here, Jeanne and Robert Aninger negotiated an agreement on spousal support based on their views of what was in their best interests. There being no showing of a failure of the expectations underlying that agreement, the

trial court was without authority to remake the agreement in ways inconsistent with the expectations and intent of the parties.

## II.  THE COURT ACTED WITHIN ITS AUTHORITY IN BRINGING THE CHILD SUPPORT UP TO THE "AGNOS" LEVEL.

■ Modification of a child support order stands on entirely different footing from modification of a spousal support order. In adopting the Agnos Child Support Standards Act of 1984 (Civ. Code, §§ 4720-4732) (hereafter Agnos) the Legislature recognized some child support orders entered before its effective date, such as the Aningers', might not meet the Agnos minimum standards. Therefore, the Legislature provided Agnos itself "constitutes a change in circumstances for the purpose of allowing the modification of child support orders entered prior to July 1, 1985." (Civ. Code, § 4730; and see *Norvall, supra*, 192 Cal.App.3d at pp. 1051-1052.) Furthermore, even before Agnos, Civil Code section 4811, subdivision (a) provided "even when there has been an agreement between the parties on the subject of child support, [such support] may be modified or revoked at any time at the discretion of the court." Finally, quite apart from legislation, case law has long put the child's interests before the contractual expectations of the parents. (*In re Marriage of Catalano, supra*, 204 Cal.App.3d at p. 552, and cases cited therein.) A parent cannot improvidently contract away her child's right to support. (*Singer* v. *Singer* (1970) 7 Cal.App.3d 807, 812 [87 Cal.Rptr. 42].)

■ In the case before us the child support and spousal support were lumped together in one undifferentiated sum of $290 per week ($1,256 per month). However, that sum was scheduled to go down to $174 per week in September 1989, after Susan's 18th birthday and her anticipated graduation from high school. Thus, the trial court could reasonably infer the difference of $116 per week must represent support for one child. Under this assumption, Mr. Aninger was paying less than the Agnos minimum according to the court's unchallenged calculation.

We find no abuse of discretion in the court's child support order.

## III.  THE ALLOCATION OF THE PROCEEDS FROM THE SALE OF THE HOUSE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

■ Under the terms of the marital settlement agreement, Ms. Aninger was entitled to 45 percent of the net proceeds from sale of the family residence "if [she] elects to sell" between June 1987 and June 1988. Only the election to sell, not the sale itself, had to occur within the June 1987 - June 1988 period. The agreement did not specify any particular means by

which Ms. Aninger was to manifest her election to sell. The only evidence of her election to sell within the June 1987 - June 1988 period was a letter from her counsel to Mr. Aninger transmitting various real estate listing documents and stating, "It is necessary that the documents be signed and the listing effectuated pursuant to the terms of the Court Order as to sales between June of 1987 and June of 1988." The letter was dated May 27, 1988.

The trial court found this letter and transmittal of the listing documents was sufficient evidence Ms. Aninger had elected to sell the residence and her election had occurred prior to June 1988. The evidence was sufficient to support the trial court's finding.

## IV. THE COURT ABUSED ITS DISCRETION IN ORDERING MR. ANINGER TO PAY ALL OF MS. ANINGER'S ATTORNEY'S FEES.

The decisions whether and in what amount to award attorney's fees and costs are in the broad discretion of the trial court and will not be reversed on appeal unless a clear showing of abuse of discretion is made. (*In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1022 [226 Cal.Rptr. 766].) This is not to imply the trial court's decision need not satisfy any standard and is governed only by the individual judge's particular notions of what is fair and reasonable. Since 1985, Civil Code section 4370.5 has required the trial court, in deciding whether to award attorney's fees, to consider: "(1) the need for the award to enable each party . . . to have sufficient financial resources to adequately present his or her case . . . [and] (2) [t]he extent to which the conduct of each party and the attorney furthers or frustrates the policy of the law to promote settlement of litigation, and . . . cooperation between the parties and attorneys." The attorney's fee award in this case is unjustifiable under either consideration.

The purpose of a fee award is to assure a party has adequate resources to properly litigate the controversy. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [209 Cal.Rptr. 354, 691 P.2d 1020].) Civil Code section 4370 states a court may make an award of attorney's fees and costs "as may be reasonably necessary for . . . maintaining or defending the proceeding . . . ." Section 4370.5 directs the court to consider "[t]he need for the award to enable each party . . . to have sufficient financial resources to adequately present his or her case . . . ." Thus, except in cases of bad faith discussed below, the threshold question is whether the party needs the award to assure her a meaningful opportunity to maintain or defend the proceeding. ". . . California's public policy favors providing 'a parity between spouses in their ability to obtain legal representation.'" (*In re Marriage of Green* (1989) 213 Cal.App.3d 14, 27 [261 Cal.Rptr. 294], quoting from *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1215-1216

[215 Cal.Rptr. 789]; and see *In re Marriage of Harrison* (1986) 179 Cal.Ap.3d 1216, 1231 [225 Cal.Rptr. 234]; *In re Marriage of Lister* (1984) 152 Cal.App.3d 411, 420 [199 Cal.Rptr. 321]; and *Hoffmeister, supra*, 191 Cal.App.3d at p. 366.) The foregoing statutes and cases lead us to the conclusion if the party does not *need* an award of attorney's fees and costs in order to "adequately present his or her case" it is an abuse of discretion to award them notwithstanding the opposing party's ability to pay. (Cf. *In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1191 [212 Cal.Rptr. 803] [court did not abuse discretion in denying attorney's fees where before trial both the wife and her attorney received $5,000 from the sale of community property even though the husband had at least $340,000 in separate property].)

■ Historically, the provisions of Civil Code section 4370 favored the wife because she usually had less income and because of case law holding the wife could not be required to " ' "impair the capital of her separate estate in order to defray her litigation costs." ' " (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1090 [209 Cal.Rptr. 383] and cases cited therein.) However, in 1985 the Legislature adopted Civil Code section 4370.5, subdivision (c) providing: "The court may order payment of the award from any type of property, whether community or separate, principal or income." The intent of this legislation was to overrule cases holding the court could not require the wife to use the capital of her separate estate in order to defray her litigation expenses. (18 Cal. Law Revision Com. Rep. (Mar. 1985) p. 357.) We believe that intent should be given effect in this case.

■ Here the evidence shows Ms. Aninger has adequate means to meet her own attorney's fees and costs. At the time of the hearing she had at least $25,000 in the bank and she was awarded $19,000 by the court as additional proceeds from the sale of the residence. Thus her liquid assets were sufficient to meet her attorney's fees and costs of $6,664.50.

Ms. Aninger argues that regardless of her need, attorney's fees and costs should be imposed on Mr. Aninger for refusal to attempt to settle her claim and cooperate with her counsel. (Civ. Code, § 4370.5, subd. (b)(2); *In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 57-59 [253 Cal.Rptr. 354].) Unlike *Norton,* the trial court in this case made no finding Mr. Aninger or his counsel behaved unreasonably and that the order to show cause should not have been brought, nor is there any evidence Mr. Aninger harassed his former wife. The only evidence of a failure to cooperate was the failure of Mr. Aninger's counsel to respond to two letters from Ms. Aninger's counsel inviting settlement discussions relative to modification of the child and spousal support. Given the fact we have reversed the spousal support order on which Ms. Aninger's counsel appears to have expended most of his

efforts, we cannot say Mr. Aninger acted unreasonably in failing to compromise with his former wife on this issue. And, while Mr. Aninger, or his counsel, can be faulted for failing to at least attempt to settle the child support and property distribution issues we do not believe that failure was so blameworthy as to warrant sanctions in the full amount of Ms. Aninger's attorney's fees. (Cf. *Norton, supra*, 206 Cal.App.3d at p. 58.) Surely, the conduct of Mr. Aninger and his counsel is a far cry from the conduct that warranted sanctions in *Norton*, (*id*. at p. 59); *In re Marriage of Green, supra*, 213 Cal.App.3d at pp. 27-29 and *In re Marriage of Melone* (1987) 193 Cal.App.3d 757, 765 [238 Cal.Rptr. 510]. Therefore, we modify the order by reducing the attorney's fee award to $1,625. (*Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587, 598 [26 Cal.Rptr. 670].)

## V. MR. ANINGER'S APPEAL IS NOT FRIVOLOUS.

■ Even though we have ruled against him on some issues, Mr. Aninger's appeal is not frivolous within the meaning of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]. It was not brought to harass the respondent or delay the effect of an adverse judgment. Nor are the issues on which he lost "totally and completely without merit." (*Id*. at p. 650.)

### DISPOSITION

The portion of the trial court's order modifying the amount and duration of spousal support is reversed. The portion of the trial court's order awarding attorney's fees is modified to award $1,625. In all other respects the order is affirmed. The parties are to bear their own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.