Opinion
BEDSWORTH, J.
Philip A. Zywiciel appeals from an order that awarded Susan A. Zywiciel permanent spousal support of $500 per month, increased child support and modified his visitation rights. He argues there was insufficient evidence to award spousal support, and the award was based on a figure generated by a computer program instead of the judge’s weighing of the prescribed statutory factors. We find ourselves forced to agree with him, and reverse.
Philip and Susan Zywiciel were divorced after a 19-year marriage. The judgment of dissolution incorporated the Zywiciel’s marital termination *1080 agreement, which did not include spousal support but instead provided that the court reserved jurisdiction on the issue. Susan received primary physical custody of their two minor daughters and Philip visitation rights, although the parents shared legal custody. Philip agreed to pay child support until each daughter reached the age of majority.
Six years later, Susan moved for spousal support, additional child support for the one child still living at home, and clarification of visitation rights. Her moving papers consisted of a form application for an order and a supporting declaration. In both the spousal support and child support sections of the form, next to the words “amount requested,” the word “guideline” is typed in rather than a dollar amount. Susan declared she needed spousal support because there was a “great disparity” between her income and Philip’s, and her expenses had increased because their older daughter—■ no longer the subject of child support payments—had been staying with her.
Philip declared, without contradiction, that the older daughter moved into her own condominium in early June, after a three-month stay, so that Susan’s increased living expenses were short-lived and over. He did not oppose the request for child support for the minor child.
The hearing was so informal that it was difficult to recognize as a hearing. Susan and Philip and their attorneys met with the judge, and the attorneys and judge talked. Susan and Philip were sworn as witnesses, but neither was called to testify. At one point, Susan was asked a few questions about her education, but Philip was never called upon to speak. Most of the “hearing” consisted of counsel providing figures and other information from the financial statements their clients had filed, which the judge plugged into the DissoMaster computer program used for calculating temporary spousal support.
The numbers revealed that Susan had an average gross income of $2,133 per month for the previous year, including child support, which fell to $1,950 for the immediately preceding month when she switched to a job as a food broker. The reason for the change was obscured by the informality of the hearing, since counsel disagreed on the point and Susan was never called to testify.[1] Philip, a lawyer, had grossed approximately $5,857 per month during the prior year, but his income increased to $6,332 monthly when he, too, accepted new employment as a deputy public defender. Due to a mix-up, Philip’s income and expense statements and his declaration were not in the trial court’s file. Counsel gave the judge “Dad’s numbers” without *1081 objection from Susan’s lawyer, who had been served with the papers and had a copy before him.
The only other relevant “evidence” was that Susan had worked as a grocery clerk while Philip was in law school, although he also held down a job. During the marriage, she worked part-time as a kindergarten school aide to earn her own spending money. After the divorce, she earned an AA degree in liberal studies, and had 30 units toward a BA degree. The problem with this “evidence” is that it came not from the parties, but from the attorneys, and was not sworn. This became a point of contention when a dispute arose over discussion of who had carried the burden of support in the early years of the marriage. Philip’s attorney—apparently forgetting both parties had been sworn—offered to have his client sworn if the court wanted to resolve the issue, explaining “I am just trying to refute [opposing counsel’s] argument, which I objected to previously.” But the court recognized the tangential nature of the point and directed him back to more pressing issues—a wise decision in terms of resolving the matter, but one which leaves us with precious little in the way of record.
The trial judge awarded Susan spousal support of $500 per month, but did not explain why or how she arrived at that figure, except to say it was “below the DissoMaster.” She ordered a copy of the DissoMaster printout attached to the minute order, which reveals the guideline temporary spousal support would have been $755 per month.
Family Code section 4320[2] provides that in ordering spousal support, the court must consider all of the circumstances enumerated in subdivisions (a) through (l). The marital standard of living is relevant as a reference point against which the various statutory guidelines are to be weighed (In re Marriage of Kerr (1999) 77 Cal.App.4th 87, 94 [91 Cal.Rptr.2d 374]), but it is not in and of itself sufficient to sustain an award of permanent support. (In re Marriage of Smith (1990) 225 Cal.App.3d 469, 486, 490 [274 Cal.Rptr. 911].) Likewise, a disparity in income, standing alone, does not justify an award of spousal support. (In re Marriage of Aninger (1990) 220 Cal.App.3d 230, 241-242 [269 Cal.Rptr. 388].) Yet these were the only reasons Susan advanced, arguing that she “cannot maintain a semblance of the lifestyle that [the parties] had when they were married,” and there was “a large discrepancy in income.” This would ordinarily be insufficient, and we cannot tell if there was more here.
Moreover, in determining permanent spousal support, a judge may not abdicate responsibility by turning to the DissoMaster temporary support *1082 guideline, even if used only as a reference point. After the hearing in this case, we decided In re Marriage of Schulze (1997) 60 Cal.App.4th 519, 523-524 [70 Cal.Rptr.2d 488]. In Schulze, we held that permanent support reflects a complex variety of factors established by statute and committed to the trial judge’s discretion, in contrast to temporary support which is aimed at maintaining the status quo pending trial. (Id. at p. 527.) “If the trial judge begins with the proposed temporary figure and then makes adjustments (or merely uses some of the section 4320 factors to justify a figure based on the temporary order), the ultimate order is not really the product of a truly independent exercise of judicial discretion. [¶] . . . [S]ection 4320 clearly contemplates a ground-up examination of the need for and appropriate level of permanent spousal support, rather than beginning with a figure pegged to a proposed temporary support order.” (Id. at pp. 526-527.)
Thus, we would have to reverse even if there appeared to be a basis for awarding spousal support because it appears that the judge impermissibly relied on the DissoMaster. Her only comment upon making the award was a reference to that program, and she ordered it attached to the minute order. Since there was no evidence offered on many of the section 4320 factors, we do not see how the judge could have made the award except by doing what Schulze enjoins—beginning with the proposed temporary support figure and adjusting it downward.
Such “evidence” as was offered only went to some of the statutory criteria (e.g., the parties’ earning capacity, Susan’s contribution to Philip’s education, Philip’s ability to pay, and the duration of the marriage). Most notably absent was any mention of Susan’s assets, her ability to engage in more remunerative employment, the tax consequences of permanent support to each party, the balance of hardships, and the goal that Susan become self-supporting within a meaningful amount of time.
At oral argument, Susan’s counsel assured us that the record contained this evidence, but he was wrong—it does not. He said Susan’s income and expense declaration listed her assets, but that is not accurate. The form declaration Susan filed left blank the spaces provided to list “cash and checking accounts,” “savings, credit union, certificates of deposit and money market accounts,” “stocks, bonds and other liquid assets,” and “all other property, real or personal.” Since it appears Susan received the former family residence in the divorce, and still resides there, this alone is a significant omission. There may have been others.
Counsel made several other representations about information in the record that just is not there. He said there was testimony Susan took the *1083 lower paying job because she needed flexible hours that would allow her to return to school, which she was not able to do previously because she was raising the children. There was no such testimony, and counsel’s argument (see ante, fn. 1) is not evidence.
It may be that these matters were discussed between counsel and the trial judge in chambers. But they did not make their way into the record. We recognize the salutary ends that informal hearings can accomplish in dissolution matters. We understand the idea that informality may serve to defuse these often incendiary cases. But at some point-—-preferably before the parties reach the Court of Appeal—a record must be made. If the court is considering something other than the DissoMaster program, the record has to reflect that. If there is evidence pertinent to the issues the court is resolving, it has to be received. A hearing at which rancor is avoided accomplishes little if the problems between the parties are not resolved in a way that ensures finality, including the possibility of appellate review.
It appears to us that the trial judge should have denied the request for spousal support if it was sought solely to restore Susan to the lifestyle she enjoyed during marriage and equalize the parties’ income. If there were other considerations, and if Susan presented evidence on all of the section 4320 factors for permanent support, this record does not reflect it. All it shows is that the court plugged the numbers into the DissoMaster temporary support guideline and made some sort of dead-reckoning adjustment. Since we can find no indication the judge considered section 4320 and exercised her independent judgment in arriving at her award, we cannot uphold it.
The order appealed from is reversed to the extent of it awarded $500 per month in spousal support. Appellant is entitled to costs on appeal.
Crosby, Acting P. J., and Rylaarsdam, J., concurred.
On October 10, 2000, the opinion was modified to read as printed above.

Susan’s lawyer said she switched jobs so she could go back to school, while Philip’s said she just wanted a different occupation.

All further statutory references are to the Family Code.