Filed 12/17/14  Marriage of McCallon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of BONNIE and MARK McCALLON. | |
| BONNIE McCALLON, | G050252 |
| Appellant, | (Super. Ct. No. RFLRS035276) |
| v. | O P I N I O N |
| MARK McCALLON, | |
| Respondent. | |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Michael J. Gassner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed.

David B. Dimitruk for Appellant.

Beverly W. Quinn for Respondent.

\*      \*      \*

INTRODUCTION

The judgment dissolving the marriage of Bonnie McCallon and Mark McCallon[1] ordered Mark to pay Bonnie $1,100 per month in spousal support, with no termination date specified. Almost nine years after the judgment was entered, Mark requested the trial court to terminate his spousal support payments. After an evidentiary hearing, the court granted Mark's request. Bonnie appeals.

We conclude the trial court had the jurisdiction to modify the spousal support obligation, but that it abused its discretion in reducing the payment to zero. We agree with and follow *In re Marriage of West* (2007) 152 Cal.App.4th 240. We therefore reverse the trial court's postjudgment order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Bonnie and Mark married in October 1981, and separated in September 2002. They entered into a marital settlement agreement (MSA), and the trial court entered a judgment in March 2003, pursuant to the terms of the MSA. Bonnie and Mark agreed that Mark would pay spousal support to Bonnie in the amount of $1,100 per month, "until [Bonnie]'s remarriage, either party's death, or further order of the Court." Additionally, the parties agreed that Bonnie would receive full title to the parties' real property (the Alta Loma property), and that Mark would relinquish all rights to the Alta

---

[1] We will refer to the parties by their first names to avoid confusion; we intend no disrespect.

Loma property without monetary offset. The judgment did not include a *Richmond* order,[2] or a *Gavron* warning.[3]

After the judgment was entered, Bonnie received an inheritance of $200,000 and a one-third interest in a condominium from the estate of her deceased mother. Bonnie then sold the Alta Loma property and used the proceeds of that sale to purchase a condominium in Laguna Niguel. Bonnie invested more than $500,000 in a business, which ultimately failed and went into bankruptcy; no assets were realized from the bankruptcy estate.

In February 2012, Mark filed an application for an order to show cause, requesting his monthly spousal support payments to Bonnie be reduced to zero. After an evidentiary hearing, the trial court granted Mark's request. Bonnie filed a timely notice of appeal from the court's postjudgment order.

---

[2] The courts have approved the use of an order, "which sets spousal support for a fixed period based upon evidence that the supported spouse will be self-supporting by the end of the period. Most typically, as in [*In re Marriage of*] *Richmond* [(1980) 105 Cal.App.3d 352], this evidence comes from the testimony of the supported spouse whose post-dissolution game plan contemplates a point in time at which he or she will be self-sufficient. It may be the result of completing future education or training, at which time full-time employment should produce the income necessary to meet the reasonable needs of the supported spouse." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 665.)

[3] A *Gavron* warning, first approved in *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, and later codified, provides: "When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for his or her support needs, taking into account the particular circumstances considered by the court pursuant to Section 4320, unless, in the case of a marriage of long duration as provided for in Section 4336, the court decides this warning is inadvisable." (Fam. Code, § 4330, subd. (b).) Bonnie and Mark's marriage lasted almost 21 years, making it a marriage of long duration for purposes of Family Code section 4336.

3

DISCUSSION

I.

*STANDARDS OF REVIEW*

"'Appellate review of orders modifying spousal support is governed by an abuse of discretion standard, and such an abuse occurs when a court modifies a support order without substantial evidence of a material change of circumstances.' [Citations.] '"So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."' [Citation.]" (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.) Any issues regarding the interpretation of the MSA, where the evidence is undisputed, are reviewed de novo. (*Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170, 1177; see *In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22 [MSA is governed by legal principles generally applicable to contracts].) A judgment by stipulation is generally regarded as a contract between the parties, and is therefore construed and interpreted in the same way as other contracts. (*Roden v. AmerisourceBergen Corp.* (2007) 155 Cal.App.4th 1548, 1561.)

II.

*THE TRIAL COURT HAD JURISDICTION TO MODIFY THE SPOUSAL SUPPORT AWARD.*

Bonnie initially argues that the trial court did not have jurisdiction to modify Mark's spousal support payments. The judgment included the following: "It is ordered, adjudged and decreed that this Judgment may not be amended or terminated except by an instrument in writing, signed by each of the parties." (Some capitalization omitted.) Bonnie argues that because she did not consent in writing to a modification of the spousal support order in the judgment, the trial court lacked jurisdiction to modify it. The spousal support provision itself reads, in relevant part: "It is ordered, adjudged and decreed that [Mark] shall pay to [Bonnie] spousal support in the sum of $1,100.00 per month . . . commencing October 15, 2002, and continuing thereafter until [Bonnie]'s remarriage, either party's death, *or further order of the Court*, whichever first occurs."

4

(Italics added, some capitalization omitted.)[4] The spousal support provision allows modification by court order, without the written consent of the parties. Each of the means by which the spousal support amount could be modified is self-executing—no one argues that a parties' death or Bonnie's remarriage would require written consent.

Family Code section 3651 creates a statutory presumption that a spousal support order may be modified: "(a) Except as provided in subdivision[] (c) . . . , a support order may be modified or terminated at any time as the court determines to be necessary. [¶] . . . [¶] (d) An order for spousal support may not be modified or terminated to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is not subject to modification or termination." (Fam. Code, § 3651, subds. (a), (d).) "[N]o specific formula or '"magic" words' are required to preclude modification." (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1017.) Whether the language of the MSA and the judgment in this case overcomes that presumption can be determined by reviewing the type of language that courts in other cases have concluded does or does not overcome the presumption.

In *In re Marriage of Hibbard*, *supra*, 212 Cal.App.4th 1007, the appellate court concluded the trial court did not have the authority to modify the spousal support award below $2,000 (*id.* at p. 1017), where the parties' MSA provided, in relevant part: "'[Howard] shall pay to [Lydia] by the 5th day of each month the sum of $4,000 per month. Said payments may be reduced to an amount to be mutually agreed upon by

---

[4] Both of these provisions in the judgment are essentially duplicative of provisions contained in the parties' MSA. The first relevant provision in the MSA reads: "This Agreement may not be amended or terminated except by an instrument in writing, signed by each of the Parties." The second provision reads: "The Court finds that [Mark] has agreed to pay directly to [Bonnie] as and for spousal support, for [Bonnie]'s support, the sum of $1,100.00 per month . . . commencing October 15, 2002, and continuing thereafter until [Bonnie]'s remarriage, either party's death, or further order of the Court, whichever first occurs."

5

[Howard] and [Lydia], after [minor child] reaches the age of eighteen, graduates from high school and the family residence is sold.  Such a reduction will be based upon a change of living expenses for [Lydia], *but shall not be reduced to an amount lower than two thousand dollars per month*, and it is agreed by the parties that spousal support is an ongoing obligation of [Howard], and will *only terminate upon* [*Lydia's*] *death or remarriage, or the death of* [*Howard*]'" (*id.* at p. 1010).  (See *In re Marriage of Bennett* (1983) 144 Cal.App.3d 1022, 1024-1025 [MSA incorporated into judgment specified the husband's spousal support obligation "'shall be non-modifiable and it is expressly agreed between the parties hereto that no Court shall have jurisdiction to modify said sum in any way nor to modify any judgment awarding alimony in conformity with the provisions of this Agreement,'" and provided that spousal support would continue until the wife's remarriage, the wife's death, or the husband's death, whichever came first]; *In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 873-874 [language in MSA that "'[w]ith the exception of provisions relating to child custody and child support, this Agreement is intended to be a final, binding, and non-modifiable agreement between said parties'" was specific enough to overcome the presumption]; *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 147, 150 [parties' stipulation on the record in open court that, "'spousal support . . . is non-modifiable unless . . . petitioner [former wife] remarries or is deceased'" overcame presumption]; *In re Marriage of Hawkins* (1975) 48 Cal.App.3d 208, 210, 211 [MSA incorporated into judgment provided, "'[t]he requirements contained herein for payments for the support of Wife shall not be modifiable on any ground*'"].)

The language in Bonnie and Mark's MSA and the judgment is more like that in *In re Marriage of Forcum* (1983) 145 Cal.App.3d 599, in which the court concluded the presumption of Family Code section 3651 had not been overcome, and the spousal support award was therefore modifiable.  A provision in the MSA, which was incorporated into the judgment, read, "that the agreement was entire and could not be

6

altered, amended, or modified, except in a writing executed by both parties, and that each party except for provisions contained in the agreement released the other from any and all liabilities, obligations, and claims, including all claims of either party upon the other for support . . . [was] insufficient to cause spousal support to be nonmodifiable." (*In re Marriage of Forcum*, *supra*, at p. 604.) The spousal support provision awarded the wife $425 per month for the first five years, and $1 per year for the next five years. (*Id.* at p. 601.) The appellate court found this provision gave the trial court jurisdiction to modify the amount of spousal support throughout the specified term (i.e., the full 10 years' postdissolution), and was a specific provision regarding spousal support that prevailed over the MSA's more general terms. (*Id.* at p. 605; see *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825, 827, 834-835 [MSA contained the following language: "'This agreement is entire. We may not alter, amend or modify it, except by an instrument in writing executed by both of us. It includes all representations of every kind and nature made by each of us to the other. This agreement shall be binding upon and inure to the benefit of both of us, and of our heirs, administrators, executors, successors, and assigns"; language was boilerplate, and was not specific enough to overcome the presumption of modifiability in the forerunner statute of Family Code section 3651].)

The MSA's general language regarding the finality of the MSA and the judgment does not permit us to ignore the specific language of the spousal support provision permitting the trial court to modify the spousal support obligation. "Under well-established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 834.) "[A] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision

7

relates." (*General Ins. Co. v. Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 426.) Here, the spousal support provision is the more specific because it deals solely with the issue of spousal support, while the amendment provision applies to the entire judgment; therefore, the spousal support provision controls.

That the MSA and the judgment reserve the trial court's jurisdiction to make orders to enforce the terms of the judgment and MSA, without reserving the court's jurisdiction to modify the support provision, is irrelevant. Family Code section 3651 provides for ongoing jurisdiction of all existing support orders, unless the parties' agreement "specifically" provides that spousal support is not modifiable. "The import of the statute may not be 'avoided by drawing inferences as to the intention of the parties' from general provisions of the agreement which do not contain a specific provision concerning judicial modification." (*Fukuzaki v. Superior Court* (1981) 120 Cal.App.3d 454, 458 [provisions for integration of agreement, incorporation in judgment, and release of rights were insufficient to overcome predecessor statute of Family Code section 3651].)

Bonnie raises several arguments on appeal justifying her claim that the trial court had no jurisdiction to modify the spousal support award, but all of them relate back to her contentions regarding the content and meaning of the MSA and the judgment. The rule of finality of judgments is not violated when the judgment specifically gives the court the right to modify the award of spousal support. The request to modify the spousal support award was not barred by principles of res judicata. The request for modification of the spousal support award was not a collateral attack on the judgment. And the evidence presented by Mark at the hearing on the request to modify was not irrelevant; as explained *ante*, the MSA and the judgment did not specifically preclude modification of the spousal support award, so evidence related to Mark's request was relevant.

Under the language of both the MSA and the judgment, the trial court retained jurisdiction to modify the spousal support award.

8

III.

*DID THE TRIAL COURT ERR IN MODIFYING THE SPOUSAL SUPPORT AWARD TO ZERO?*

"'"Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.] Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. [Citations.] It includes all factors affecting need and the ability to pay.' [Citation.] 'A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order.' [Citation.]" (*In re Marriage of Dietz, supra*, 176 Cal.App.4th at p. 396.)[5]

_____

[5] Family Code section 4320 provides: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living. [¶] (d) The needs of each party based on the standard of living established during the marriage. [¶] (e) The obligations and assets, including the separate property, of each party. [¶] (f) The duration of the marriage. [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [¶] (h) The age and health of the parties. [¶] (i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party. [¶] (j) The immediate and specific tax consequences to each party. [¶] (k) The balance of the hardships to each party. [¶] (*l*) The goal that the supported party shall be self-supporting

9

The court made the following findings, pursuant to Family Code section 4320, on the record after the hearing on Mark's request to terminate spousal support: Bonnie and Mark's marriage was a long-term marriage; the marital standard of living was based on an annual income of more than $100,000; at the time of dissolution of the marriage, the marital estate owned assets, including a house with significant equity; Bonnie had a high school level education, but had worked during and after the marriage, and her physical health would not limit her ability to be employed; both Bonnie and Mark received inheritances after the dissolution of their marriage; Bonnie had significant money available to her, and invested about $500,000 in a business, all of which was lost; and the amount Bonnie lost in her unsuccessful investment was equivalent to more than 37 years' worth of spousal support from Mark, based on $1,100 per month.

In *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 905, the wife was originally awarded $2,500 per month in spousal support from the husband. The wife also received almost $500,000 as her share of the community assets, equalizing payments, and proceeds from the sale of a community asset. (*Ibid.*) The spousal support award was decreased to $1,800 per month almost three years after the original support order was issued. (*Ibid.*) Another two and a half years later, the wife petitioned for an increase in her spousal support to $3,000. (*Ibid.*) The trial court denied her request, and instead decreased the spousal support award to $500 per month, and ordered that the

within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties. [¶] (m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325. [¶] (n) Any other factors the court determines are just and equitable."

10

support payments would terminate completely three and a half years in the future. (*Id.* at pp. 905-907.)

The wife appealed. (*In re Marriage of McElwee*, *supra*, 197 Cal.App.3d at p. 904.) The appellate court concluded that the trial court did not abuse its discretion in reducing the wife's spousal support. (*Ibid.*) As is relevant to this case, the appellate court held that the imprudent investment of personal assets is a material change that may support a modification of spousal support. (*Id.* at p. 909.) "[J]ust as lack of diligence in seeking employment may lead to a refusal to award spousal support [citation], so too may improvident management of assets, which were sufficient to provide self-sufficiency in the accustomed lifestyle, justify termination of support and jurisdiction even though such an order may result in an alteration in the supported spouse's lifestyle. To hold otherwise, would encourage profligacy and discourage sound investment and prudent management to the detriment of all concerned." (*Id.* at pp. 909-910.)

In *In re Marriage of West*, *supra*, 152 Cal.App.4th 240, the court distinguished *In re Marriage of McElwee*. "There is authority that a spouse's failure to manage her finances in such a manner as to enable her to become self-supporting justifies termination of support. [Citation.] The foundation for this authority is that the spouse's share of the marital assets was sufficient to provide self-sufficiency in the accustomed lifestyle. [Citation.] In other words, a party cannot dispose of income-earning property and expect the supporting spouse to make up the difference. Similarly, it may be appropriate to impute income to a spouse of sums that could be earned by an income-producing investment strategy. [Citation.] But such authority is irrelevant here where [the supported spouse] was not seeking an increase in support to cover the interest lost when the note was paid off. [¶] Because [the supported spouse] has not sought an increase in support to cover the loss of income resulting from the exhaustion of the note, there is no need to consider whether the parties understood and agreed that [the supporting spouse]'s support obligations would be based, in part, on both the interest and

11

the principal [the supported spouse] would be receiving on the note. It also is not particularly relevant that there is no evidence, and no evidence from which it might be inferred, that [the supported spouse] used the principal for anything other than to cover unexpected expenses or to maintain a standard of living comparable to the marital standard of living. [¶] It also is unfair to penalize [the supported spouse] for failing to invest the principal without first warning her that she would be expected to invest it. [Citations.] In sum, that [the supported spouse] received a substantial cash asset upon termination of the marriage provides no grounds for later reducing support, and even if it did, it would be an abuse of discretion to penalize her for failing to invest that asset without providing her with fair warning of the court's expectations." (*In re Marriage of West*, *supra*, at pp. 250-251, fn. omitted.)

Bonnie and Mark stipulated before the hearing on Mark's request to reduce support that Bonnie was not given a *Gavron* warning when the original judgment was entered. Nothing in the MSA or the judgment evidences an intent by the parties that Bonnie should become self-sustaining. To the contrary, the MSA gives every indication that the monthly spousal support being paid by Mark was not sufficient to allow Bonnie to maintain the marital standard of living, and would therefore continue indefinitely.

No material change in circumstances was established by the evidence presented at the hearing. Mark's ability to pay did not diminish, and there was no significant reduction in Bonnie's need. (We note that Bonnie's income increased from $22,400 annually to $32,364 annually because she was working full time rather than part time as she had been during the marriage.)

The trial court's modification of the spousal support order also relied on Bonnie's loss of more than $500,000 in a bad business investment, noting that the loss represented more than 37 years of Mark's spousal support payments based on $1,100 per month. We do not see why this information was relevant to the trial court's order. As established by the court in *In re Marriage of West*, *supra*, 152 Cal.App.4th at

12

pages 250-251, mismanagement of funds intended to make the supported spouse self-sufficient may be relevant when the supported spouse seeks *an increase* in support to offset the income lost by the mismanagement. It is not relevant, however, where the supporting spouse seeks a reduction in the amount of spousal support, no other material change of circumstances has been established, and no evidence shows the funds were intended to make the supported spouse self-sufficient.

On the facts presented in connection with Mark's February 2012 application for an order to show cause, the trial court abused its discretion in reducing Bonnie's monthly spousal support award to zero, and we therefore reverse the postjudgment order. In light of our conclusion that the trial court has jurisdiction to modify the spousal support award, our opinion is without prejudice to either party seeking a modification of the spousal support award on appropriate grounds.

DISPOSITION

The postjudgment order is reversed. We direct the trial court to deny the application for an order to show cause regarding modification of spousal support. Appellant to recover costs on appeal.

FYBEL, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

13